**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDRE JASON WATTS,<br><br>Plaintiff,<br><br>v.<br><br>CBRE, INC. and BEIGENE USA, INC.,<br><br>Defendants. | Civil Action No. 25-4483 (RK) (JTQ)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon *pro se* Plaintiff Andre Jason Watts's ("Plaintiff") application to proceed *in forma pauperis* (ECF No. 1-3, "IFP"), together with his Complaint (ECF No. 1, "Compl."). Plaintiff also filed a Motion for Final Judgment & Permanent Injunction (ECF No. 3), Motion for Judicial Notice of Patterned Retaliatory Conduct and Suppression of Rights (ECF No. 4), Motion for Temporary Restraining Order (ECF No. 5), Motion to Expedite Hearing on Motion for TRO and Preliminary Injunction (ECF No. 6), Motion to Recognize Civil Conspiracy to Interfere with Civil Rights (ECF No. 8), Motion for Judicial Acknowledgment of Risk to 21 CF & 11 Compliance (ECF No. 9), and Motion for Protective Legacy Recognition of Innovation Filing (ECF No. 10). For the reasons explained below, the application to proceed *in forma pauperis* is **DENIED**, the Complaint is **DISMISSED** without prejudice, and all other Motions are **DENIED** as moot.

## I. BACKGROUND

This case arises out of Plaintiff's recent employment termination and his concern that his former employers will assert an ownership interest over an invention that he developed independently. In a two-paged Complaint, Plaintiff, a resident of New Jersey, alleges that on October 7, 2024, he began working as a Calibration Technician at Defendant BeiGene USA ("Beigene") through Defendant CBRE ("CBRE") (together "Defendants"). (Compl. at 1 ¶ 1.)[1] Between October 2024 and May 2025, Plaintiff alleges he "independently developed an invention known as WattsProtect, a proprietary AI-drive calibration and environmental safety platform for GMP-regulated facilities." (*Id.* at 2 ¶ 2.) Plaintiff states that on May 8, 2025, he returned to work at Beigene after a period of administrative leave, but he does not explain the basis of the leave itself. (*Id.* ¶ 3.) Plaintiff alleges that when he returned to work, he was first called into a meeting with CBRE management, who questioned him about his WattsProtect invention, and then removed him from the premises "without any written explanation or formal grievance process," i.e., terminating his employment. (*Id.* ¶¶ 5–6.) One week later, on May 15, 2025, Plaintiff "submitted" a formal Non-Disclosure Agreement ("NDA") to CBRE leadership in order to protect the "confidential elements and ownership rights of the WattsProtect system." (*Id.* ¶ 6.) Since then, according to Plaintiff, CBRE has refused to engage with or acknowledge him, or "provide process related to Plaintiff[']s intellectual property." (*Id.* ¶ 7.)

On May 18, 2025, just ten days after the alleged termination of his employment, Plaintiff filed a five-count Complaint against Defendants, asserting claims for: (1) Retaliation under 42 U.S.C. §1981 and Public Policy; (2) Misappropriation of Trade Secrets under 18 U.S.C. § 1836;

---

[1] For purposes of this decision, the Court cites CM/ECF page numbers when referring to specific pages in the Complaint and Motions.

2

(3) Breach of Non-Disclosure Agreement; (4) Tortious Interference with Prospective Economic Advantage; and (5) Declaratory Relief under 28 U.S.C. § 2201 for Intellectual Property Ownership. (*Id.* at 2.) Plaintiff seeks a declaration that he is the sole legal owner of WattsProtect, his invention; an order enjoining Defendants from either suppressing or asserting an ownership claim over WattsProtect; and an unstated amount of compensatory and punitive damages, costs, interests, and attorney's fees. (*Id.*)

Along with his Complaint, and IFP application, Plaintiff filed a slew of additional motions, most of which concern his purported ownership over WattsProtect. Plaintiff's Motion for Permanent Injunction asks this Court to prevent Defendants from interfering with the ownership, distribution, promotion, implementation, or attribution of his invention. (ECF No. 3 at 3.) A "Motion for Judicial Notice of Patterned Retaliatory Conduct and Suppression of Rights" sets forth a list of six legal actions against CBRE for employment discrimination, retaliation, unlawful termination, or unlawful separation agreements, purporting to establish a pattern that Defendants "demonstrate a consistent disregard for employee rights and legal obligations" and asks the Court to take judicial notice of same. (ECF No. 4 at 2.) Additionally, Plaintiff seeks a protective order prohibiting Defendants from "reviewing, using, distributing, or referencing any materials relating to WattsProtect," (ECF No. 5 at 2), and a Temporary Restraining Order and Preliminary Injunction similarly prohibiting Defendants from using WattsProtect (*id.* at 7).

The Court notes at the outset that the allegations in the Complaint are barebones and raise many factual and legal questions that inhibit Plaintiff's ability to state any claim. Plaintiff has not alleged belonging to any protected class, has not explained whether any Defendant has access or wants access to his invention, has neither attached nor quoted from any purported NDA (and has not alleged that any Defendant signed the NDA), and has not disclosed the basis or conditions of

his administrative leave. Furthermore, Plaintiff's IFP application is mired with inconsistencies and does not establish financial need. Accordingly, since the Court denies Plaintiff's IFP application and dismisses the Complaint, it will not address any of Plaintiff's other Motions.

**II.    IFP SCREENING**

Under 28 U.S.C. § 1915, a plaintiff may proceed *in forma pauperis*—without paying a filing fee. The Court engages in a two-step analysis when considering IFP applications: "First, the Court determines whether the plaintiff is eligible to proceed under 28 U.S.C. § 1915(a). . . . Second, the Court determines whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted, as required by 28 U.S.C. § 1915(e)." *Archie v. Mercer Cnty. Courthouse*, No. 23-3553, 2023 WL 5207833, at *2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)). The IFP statute requires that a plaintiff demonstrate financial need through the submission of a complete financial affidavit. *See Atl. Cnty. Cent. Mun. Court Inc. v. Bey*, No. 24-0105, 2024 WL 1256450, at *1 (D.N.J. Mar. 22, 2024) (citing 28 U.S.C. § 1915(a)).

Plaintiff has failed to demonstrate that he has sufficient financial need because he was, until very recently, gainfully employed and earning a sufficient salary to afford court fees. Plaintiff submitted a signed long-form IFP application along with his Complaint. (*See* IFP.) In response to the question asking for his "average monthly income amount during the past 12 months," Plaintiff put a 0 in every box except one. (*Id.* at 1.) Plaintiff only completed the "Child support" box, where he indicated that he receives $568 per month in child support. At the bottom of the income chart, Plaintiff calculated his total average monthly income during the past 12 months as $568. (*Id.* at 2.) Plaintiff's answers to the next question, asking about employment and gross monthly pay, stand in stark contrast to his income calculation. Plaintiff stated that he worked at CBRE from 1/25 to

4

5/16 and earned $11,000 in gross monthly pay, which annualizes to a $132,000 yearly salary. (*See id.*) Before that, he worked at IPM from 2/23 to 8/24 and made $4,000 in gross monthly pay. (*Id.*)

In further contradiction, Plaintiff asserts that he has no money in any bank account (and indeed, has no bank accounts), despite the fact that he was earning $11,000 per month up until just a few days ago. (*See id.*) Plaintiff lists a litany of monthly expenses, which total $5,070—still less than half of what he was purportedly making at CBRE in a given month. (*See id.* at 4–5.) Notably, Plaintiff's highest expense line—by far—is the $2,100 per month he claims to expend for recreation, entertainment, newspapers, and magazines. (*Id.* at 4.)

The Court finds that Plaintiff, who earned a $132,000 salary up until a few weeks ago, has not sufficiently established his inability to pay. *See Hope v. Pershing*, No. 18-17298, 2019 WL 13251074, at *1 (D.N.J. Jan. 14, 2019) (denying IFP application based on Plaintiff's $10,400 monthly salary); *Smith v. Dobin*, No. 23-4485, 2023 WL 8113356, at *2 (D.N.J. Nov. 22, 2023) (denying IFP application based on Plaintiff's $8,800 monthly income and average monthly expenses of less than half her stated expenses). The Court accordingly **DENIES** Plaintiff's IFP application.

### III.   COMPLAINT SCREENING

Although a court is not required to conduct a screening of a complaint after denying an IFP application, the Third Circuit has endorsed a "flexible approach" that allows a court to dismiss a case "at any time . . . regardless of the status of a filing fee." *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019). The Court proceeds to screen Plaintiff's Complaint in an effort to "conserve judicial resources" later. *See id.*

The Court may dismiss any claims that are "(1) . . . frivolous or malicious; (2) fail[] to state a claim upon which relief may be granted; or (3) seek[] monetary relief from a defendant immune

from such relief." 28 U.S.C. § 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). A court must be mindful to hold a *pro se* plaintiff's complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "In determining whether a claim should be dismissed . . . a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court analyzes each of Plaintiff's claims below.

*First*, Plaintiff fails to state a claim under 42 U.S.C. § 1981. To establish a discrimination claim under Section 1981, "a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Castleberry v. STI Group*, 863 F.3d 259, 266 (3d Cir. 2017). In a retaliation case, "a plaintiff must demonstrate that there had been an underlying section 1981 violation" and then further establish that "(1) he engaged in a protected activity . . . (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Id.* at 267 (cleaned up). Plaintiff does not get past the first, most basic element: he does not allege in his Complaint that he belongs to any racial minority. Furthermore, his allegations entirely relate to his WattsProtect invention, and he appears to connect his employment termination to the meeting where he was "questioned about the invention known as WattsProtect." (*See* Compl. at 2.) Plaintiff makes no allegation that Defendants based his employment termination on his race.

*Second*, Plaintiff fails to state a claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. In order to state a DTSA claim, a plaintiff must demonstrate: "(1) the existence of a trade secret, generally defined as information with independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3); (2) that 'is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]' *id.* § 1836(b)(1); and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition or use or disclosure of the secret, *id.* § 1839(5)." *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). Even assuming *arguendo* that WattsProtect is a trade secret that has economic value to Plaintiff and is related to a product or service used in or intended for use in interstate commerce, Plaintiff's Complaint is void of any allegation that either Defendant misappropriated WattsProtect. Plaintiff alleges that he was asked questions about WattsProtect and subsequently was terminated from his employment, though he does not explain whether he *told* his employer about the invention, or whether they learned about it through some improper means. (Compl. at 2 ¶¶ 4–5.) It is further entirely unclear to the Court whether Defendants have possession over WattsProtect, whether they have used it or intend to use it, or, frankly, whether they even know what WattsProtect is. There is also no indication that Defendants have disclosed the existence of WattsProtect to anyone else.

*Third*, Plaintiff's breach of contract claim fails because he has not alleged that Defendants were party to the contract. To state a claim for breach of contract in New Jersey, a plaintiff must allege (1) the existence of a valid contract between the parties; (2) that defendant breached the Contract; (3) that plaintiff suffered damages due to the breach." *See AT&T Credit Corp. v. Zurich Data Corp.*, 37 F. Supp. 2d 367, 370 (D.N.J. 1999). Plaintiff here merely alleges that he "submitted a formal . . . NDA to CBRE leadership" and that, essentially, CBRE never got back to him about

it. (*See* Compl. at 2 ¶¶ 6–7.) Plaintiff does not indicate that any Defendant ever agreed to the NDA or accepted to be bound by its terms.

*Fourth*, Plaintiff fails to state a claim for tortious interference with prospective economic damage. To state a claim under New Jersey law, a plaintiff must demonstrate: "(1) some reasonable expectation of economic advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) a reasonable probability that the plaintiff would have obtained the anticipated economic benefit in the absence of interference, and (5) that the interference caused the plaintiff damage." *Comm. Ins. Servs., Inc. v. Szczurek*, Nos. 05-3536, 05-3565, 2006 WL 8457151, at *4 (citing *Fineman v. Armstrong Indus., Inc.*, 980 F. 2d 171, 186 (3d Cir. 1992)). Plaintiff has not come close to meeting any of the five elements required. Plaintiff's Complaint is void of any reference to actual or probable economic benefit stemming from WattsProtect—either on the part of Plaintiff or Defendants—and further does not state that Defendants even knew of any possible economic advantage. According to the Complaint, CBRE management "questioned [Plaintiff] about the invention known as WattsProtect," but this singular allegation provides no insight into what CBRE management knew about the product or its economics.

Therefore, because Plaintiff has failed to state a claim under any of his purported bases for legal action,[2] his Complaint is **DISMISSED** without prejudice.

Furthermore, because Plaintiff's Complaint is dismissed in full for failure to state a claim upon which relief may be granted, Plaintiff's subsequent Motions are **DENIED** as moot.

---

[2] Plaintiff's Fifth cause of action, for Declaratory Judgment pursuant to 28 U.S.C. § 2201 is "not an independent cause of action" and has no effect given the dismissal of Plaintiff's other Counts. *See Doe v. Rider University*, No. 16-4882, 2018 WL 466225, at *18 (D.N.J. Jan. 17, 2018) (citing *Weaver v. Wilcox*, 650 F.2d 22, 25 (3d Cir. 1981)).

Case 3:25-cv-04483-RK-JTQ    Document 18    Filed 05/21/25    Page 9 of 10 PageID: 145

Case 3:25-cv-04483-RK-JTQ    Document 18    Filed 05/21/25    Page 9 of 10 PageID: 145

Accordingly, for the reasons set forth above and for other good cause shown,

**IT IS** on this 21st day of May, 2025, **ORDERED** that:

1. Plaintiff's application to proceed *in forma pauperis* (ECF No. 1-3) is **DENIED**;

2. Plaintiff's Complaint (ECF No. 1) is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e);

3. Plaintiff's Motions (ECF Nos. 3, 4, 5, 6, 8, 9, 10) are **DENIED** as moot;

4. Plaintiff may have this case reopened within thirty (30) days of the date of entry of this Memorandum Order by (i) paying the filing fee or filing a new application to proceed *in forma pauperis*; and (ii) filing an amended complaint;

5. If Plaintiff fails to file an amended complaint within the thirty (30) days, the Complaint will be dismissed with prejudice;

6. Upon receipt of a new application to proceed *in forma pauperis* and an amended complaint within the time allotted by this Court, the Clerk will be directed to reopen this case;

7. The Summons shall not issue at this time, as the Court's *sua sponte* screening of the amended complaint has not yet been completed; and

8. The Clerk's Office is directed to terminate the Motions at ECF Nos. 3, 4, 5, 6, 8, 9, 10; and

9. The Clerk's Office is directed to **CLOSE** this matter and serve on Plaintiff by regular U.S. mail this Memorandum Order and a blank IFP Form.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**