**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ANDRE JASON WATTS, | : | Civil Action No.: 3:25-cv-04483-RK-JTQ |
| Plaintiff, | : | |
| v. | : | |
| CBRE GROUP, INC., | : | |
| Defendant. | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

On the Brief:

    Jennifer Casazza Carter, Esq.
    Kerrie R. Heslin, Esq.
    Naomi Gulama, Esq.

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY ......................................................................................4

STATEMENT OF FACTS .......................................................................................7

LEGAL STANDARD ............................................................................................11

LEGAL ARGUMENT ...........................................................................................13

I.  THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM OF UNLAWFUL RETALIATION UNDER CEPA OR THE COMMON LAW ...............................................................................13

    A.  There Is No Valid Claim for Retaliation in Violation of CEPA....13

        1.  Plaintiff's Submission of a "Policy 6.4 Disclosure," and Alleged Complaints of an "Ultimatum," "Coerced Interrogation" and "Improper Access Demands" Are Not Protected Activity ...................................................................16

        2.  Plaintiff's Complaint Relating to Alleged Conduct of George Murray Is Not Protected Activity .............................................17

        3.  Providing a Legal Hold Notice or an NDA to an Employer Is Not Protected Activity .........................................................19

        4.  Plaintiff's Vague and Unspecified "Internal Complaints" Do Not Constitute Protected Activity.............................................20

    B.  There Is No Valid Common Law Claim for Wrongful Termination .................................................................21

II.  THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION UNDER EITHER THE DTSA OR THE NJTSA...............................................22

III.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ...............................................27

IV.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM OF BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING................................................................29

V.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW ......................................................................30

     A. The NJWPL Claim Must Be Dismissed for Want of Jurisdiction .........................................................31

     B. The SAC Fails to Plead Sufficient Facts to Establish a NJWPL Claim ..............................................................................32

VI.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM OF TORTIOUS INTERFERENCE..............................................33

VII.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR A DECLARATORY JUDGMENT......................................35

CONCLUSION ...........................................................................................36

# TABLE OF AUTHORITIES

Cases

Arterbridge v. Wayfair LLC,
    No. 21-13306, 2022 WL 577956 (D.N.J. Feb. 25, 2022)..................................15

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)........................................................ 11, 12, 25, 13, 33, 21

Barefoot Architect, Inc. v. Bunge,
    Barefoot Architect, Inc. v. Bunge, 632 F.3d 822 (3d Cir. 2011).......................12

Battaglia v. United Parcel Serv., Inc.,
    214 N.J. 518 (2013) ........................................................................................18

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).................................................................................. *passim*

Boyadjian v. CIGNA Companies,
    973 F.Supp. 500 (D.N.J. 1997)........................................................................32

Cohn v. Fisher,
    118 N.J. Super. 286 (1972)..............................................................................27

Doe v. Rider University,
    No. 16-4882, 2018 WL 466225 (D.N.J. Jan. 17, 2018) ...................................35

Dzwonar v. McDevitt,
    177 N.J. 451 (2003) ........................................................................................15

Fink v. Bishop,
    No. 23-566 (CPO) (MJS), 2024 WL 3084409 (D.N.J. June 21, 2024)............32

Fioriglio v. City of Atl. City,
    996 F. Supp. 379 (D.N.J. 1998), aff'd, 185 F.3d 861 (3d Cir. 1999) ...............20

Flear v. Glacier Garlock Bearings, a Div. of Enpro Indus., Inc.,
    159 F. App'x 390 (3d Cir. 2005)......................................................................18

Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,
    421 F. Supp. 2d 831 (D.N.J. 2006), aff'd, 482 F.3d 247 (3d Cir. 2007) ..........27

Fowler v. UPMC Shadyside,
    578 F.3d 203 (3d Cir. 2009) ...........................................................................11

iii

Frederico v. Home Depot,
    507 F.3d 188 (3d Cir. 2007) .............................................................................27

Hargrove v. Sleepy's, LLC,
    220 N.J. 289 (2015) .........................................................................................31

Hitesman v. Bridgeway, Inc.,
    218 N.J. 8 (2014) ..................................................................................... 14, 15

In re AZEK Bldg. Prods., Inc., Mktg. & Sales Pracs. Litig.,
    82 F. Supp. 3d 608 (D.N.J. 2015).....................................................................35

Jenkins v. Region Nine Housing Corp.,
    306 N.J. Super. 258 (App.Div.1997), certif. denied, 153 N.J. 405 (1998) ......21

Jiaherb, Inc. v. MTC Indus., Inc.,
    No. 18-15532 (KSH) (CLW), 2023 WL 3249822 (D.N.J. May 4, 2023)........25

Kay v. Ehrler,
    499 U.S. 432 (1991)..........................................................................................32

Klein v. University of Med & Dentistry of N.J.,
    377 N.J. Super. 28 (App. Div. 2005)........................................................ passim

Kost v. Kozakiewicz,
    1 F.3d 176 (3d Cir. 1993) .................................................................................11

Lamorte Burns & Co. v. Walters,
    167 N.J. 285 (2001) .........................................................................................17

Luongo v. Vill. Supermarket, Inc.,
    261 F. Supp. 3d 520 (D.N.J. 2017)...................................................................29

MacDougall v. Weichert,
    144 N.J. 380 (1996) .........................................................................................33

Maia v. IEW Constr. Grp.,
    257 N.J. 330 (2024) .........................................................................................31

Maw v. Advanced Clinical Commc'ns, Inc.,
    179 N.J. 439 (2004) ................................................................... 14, 16, 20, 21

Myles v. Securitas Sec. Servs., USA, Inc.,
    2025 WL 1431164 (D.N.J. May 19, 2025)........................................................6

Novartis Pharms. Corp. v. Bausch & Lomb, Inc.,
    No. 07-5945 (JAG), 2008 WL 4911868 (D.N.J. Nov. 13, 2008)......................34

Oakwood Laboratories LLC v. Thanoo,
    999 F.3d 892 (3d Cir. 2021) ....................................................... 23, 24

Ortez v. Beta Elec. ELP, LLC,
    No. 23-3693 (JXN)(MAH), 2025 WL 2169973 (D.N.J. July 31, 2025)..........31

Pierce v. Ortho Pharmaceutical Corp.,
    84 N.J. 58 (1980) ................................................................ *passim*

Pinnix v. The Fielding Inst.,
    53 F. App'x 204 (3d Cir. 2002)........................................................30

Presbyterian Church in Newark v. Howard Company–Jewelers,
    12 N.J. 410 (1953) ....................................................................28

Safonof v. DirectSat USA,
    No. 19-07523, 2020 WL 1527946 (D.N.J. Mar. 31, 2020) ..............................15

Samuel-Bassett v. KIA Motors Am., Inc.,
    357 F.3d 392 (3d Cir. 2004) ..........................................................31

Sirin v. Portx, Inc.
    No. 20-7853 (SRC), 2020 WL 6194018 (D.N.J. Oct. 22, 2020)......................33

St. Paul Mercury Indemn. Co. v. Red Cab Co.,
    303 U.S. 283 (1938)..................................................................31

Tartaglia v. UBS PaineWebber, Inc.,
    197 N.J. 81 (2008) ............................................................. 21, 22

Trzaska v. L'Oreal USA, Inc.,
    865 F.3d 155 (3d Cir. 2017) ..........................................................14

Vasough v. Kierce,
    437 N.J. Super. 218 (App. Div. 2014)..............................................18

Vitaworks IP, LLC v. Qianjiang Yongan Pharm. Co.,
    2018 WL 10152229 (D.N.J. Nov. 5, 2018) .........................................6

Watts v. CBRE, Inc.,
No. 25-4483-RK-JTQ, 2025 WL 1456785 (D.N.J. May 21, 2025) ........................4

Weaver v. Wilcox,
  650 F.2d 22 (3d Cir. 1981) ................................................................................35

Zucker v. Westinghouse Elec.,
  374 F.3d 221 (3d Cir. 2004) ..............................................................................32

**Statutes**

42 U.S.C § 1981 .............................................................................................15, 4

18 U.S.C. § 1836 ........................................................................................ *passim*

18 U.S.C. § 1839 ........................................................................................ 23, 26

28 U.S.C. § 1332(a) ...........................................................................................32

28 U.S.C. § 2201 ...........................................................................................4, 12

N.J.S.A. § 34:11 ...........................................................................................*passim*

N.J.S.A § 34:19 ..................................................................................................14

N.J.S.A. § 56:15-2 .........................................................................................*passim*

**Court Rules**

Fed. R. Civ. P. 8 .................................................................................................13

Fed. R. Civ. P. 12(b)(1).....................................................................................3, 32

Fed. R. Civ. P. 12(b)(6)............................................................................... *passim*

**Regulations**

21 C.F.R. § 210–212 .........................................................................................19

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ...............................................................26

## PRELIMINARY STATEMENT

By way of disjointed, vague, and conclusory allegations, *pro se* Plaintiff Andre Jason Watts ("Plaintiff") fails to set forth any viable claim of relief against his former employer Defendant CBRE, Inc., incorrectly identified as CBRE Group, Inc. ("CBRE" or "Defendant"). Following a tortured procedural history, consisting of over 350 docket entries in less than one year of pre-discovery litigation, Plaintiff was granted leave to file a second amended complaint in yet another attempt to avoid inevitable dismissal of this action. As the nine-count Second Amended Complaint ("SAC") fails to set forth any facts sufficient to withstand basic scrutiny, it must be dismissed with prejudice as a matter of law for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

The First and Second Counts of the SAC purport to set forth claims of wrongful termination in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") and New Jersey common law; however, Plaintiff fails to plead facts to establish the basic elements of such claims. Instead, Plaintiff relies upon naked assertions, vague contentions and purely personal disputes in an effort to buttress his facially deficient allegations. Indeed, Plaintiff fails to articulate a reasonable belief of a violation of any law, rule, regulation or public policy, or that he engaged in any protected activity as a matter of law. Such deficits are fatal to Plaintiff's claims and mandate dismissal.

1

Likewise, Plaintiff fails to set forth any articulable violation of the Defend Trade Secrets Act ("DTSA") or the New Jersey Trade Secrets Act ("NJTSA") as alleged in Counts III and IV of the SAC, respectively. The SAC does not plead the existence of a trade secret, let alone misappropriation of any such trade secret as defined by the applicable statutes. Accordingly, these claims fail and must be dismissed with prejudice.

Plaintiff also fails to state valid causes of action for breach of contract, and breach of the implied covenant of good faith and fair dealing as purportedly raised in Counts V and VI of the SAC. As this Court already explained in dismissing the Initial Complaint in this matter, Plaintiff does not articulate any assent to a contract by CBRE, as Plaintiff fails to allege that CBRE countersigned, executed or otherwise agreed to the alleged NDA terms or any other contract. Plaintiff also fails to articulate with any specificity the terms of the alleged agreement or how CBRE allegedly breached such agreement resulting in any damage. Accordingly, Counts V and VI must be dismissed under Fed. R. Civ. P. 12(b)(6).

Plaintiff's claim that CBRE violated the New Jersey Wage Payment Law ("NJWPL") also requires dismissal for two key reasons: 1) even if Plaintiff could sustain such a cause of action – which he cannot – the Court would be deprived of diversity jurisdiction, as Plaintiff's claim under the NJWPL does not meet the diversity jurisdictional threshold of $75,000; and 2) Plaintiff fails to articulate facts

2

beyond mere conclusory assertions, which is insufficient to meet the pleading standards set forth by <u>Twombly</u> and <u>Iqbal</u>. These failures require dismissal of the claims as a matter of law for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

Similarly, Count VIII of the SAC fails to set forth an articulable claim for tortious interference under New Jersey common law. Plaintiff does not articulate facts to demonstrate any of the requisite elements, including a protectable interest in a specific future economic or contractual relationship, intentional interference without justification by CBRE, or that such alleged interference resulted in any cognizable loss. Rather, Plaintiff relies upon pure speculation and conclusory assertions, which are insufficient to state a claim as a matter of law.

Finally, Count IX of the SAC requires dismissal because a declaratory judgment is not an independent cause of action – it is a remedy. The Court already addressed this issue in dismissing Plaintiff's Initial Complaint, but Plaintiff has once again failed to heed the Court's instruction. Accordingly, Count IX, like all other claims in the SAC, fails to state a claim as a matter of law. The SAC must therefore be dismissed in its entirety, with prejudice.

## PROCEDURAL HISTORY

On May 18, 2025, Plaintiff initiated the instant action by filing a five-count Complaint (the "Initial Complaint") against CBRE, asserting the following claims: Retaliation under 42 U.S.C §1981 and Public Policy (Count I), Misappropriation of Trade Secrets pursuant to 18 U.S.C. §1836 (Count II), Breach of Non-Disclosure Agreement (Count III), Tortious Interference with Prospective Economic Advantage, (Count IV) and Declaratory Relief Under 28 U.S.C. §2201 for "Intellectual Property Ownership" (Count V). See Docket Entry, ("Dkt.") 1. Soon thereafter, on May 21, 2025, the Court dismissed Plaintiff's Complaint without prejudice, *sua sponte*, finding that Plaintiff failed to state a claim for each of the causes of action asserted in the Initial Complaint and directed Plaintiff to file an amended complaint within thirty (30) days to avoid dismissal with prejudice. See Dkt. 18.[1] The following day, Plaintiff filed a Motion to "Reopen Civil Case and Accept Amended Complaint Pursuant to Court Order and Pending IFP Application." See Dkt. 20.

On June 4, 2025, the Court ordered the Clerk of Court to file the First Amended Complaint ("FAC") and reopen the case. See Dkt. 54. CBRE was served with the Amended Complaint on June 16, 2025. See Dkt. 100. Within the FAC,

---

[1] The Memorandum Order referenced herein as Dkt. 18, is also accessible at Watts v. CBRE, Inc., No. 25-4483-RK-JTQ, 2025 WL 1456785 (D.N.J. May 21, 2025).

Plaintiff asserted the following causes of action: "Retaliation in Violation of the First Amendment" (Count I), "Deprivation of Due Process (Fourteenth Amendment)" (Count II) and "Unlawful Withholding of Property" (Count III). See Dkt. 20. On July 21, 2025, CBRE moved to dismiss the FAC in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). See Dkt. 199.

On August 12, 2025, Plaintiff attempted to file a Motion for Leave to Amend his FAC. See Dkt. 249. The motion attempted to supplement Plaintiff's operative pleading with claims of retaliation in violation of public policy and CEPA. Id.  On August 20, 2025, the Court denied Plaintiff's motion without prejudice due to various procedural defects, including failure to comply with L. Civ. R. 15.1(a)(2). Dkt. 267.  On August 20, 2025, Plaintiff filed another Motion for Leave to Amend, asserting a plethora of additional causes of action: Retaliation in Violation of the CEPA and Pierce v. Ortho Pharmaceutical Corp. (Count I); Violation of the DTSA (Count II); Violation of the NJTSA (Count III); Breach of Contract (Count IV); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count V); Violation of the NJWPL (Count VI); Tortious Interference (Count VII); and "Declaratory Judgment (Ownership/Non-Use)" (Count VIII). See Dkt. 269. On November 24, 2025, this Court again denied Plaintiff's Motion without prejudice, permitting Plaintiff to file a renewed motion for leave to amend within 21 days of the Court's Order. See Dkt. 338. The Court also administratively terminated

Defendant's Motion to Dismiss pending a determination on any renewed motion for leave to amend the FAC. On November 25, 2025, Plaintiff filed the Renewed Motion asserting the same causes of action as identified in his August 20, 2025 motion. See Dkt. 340.

On April, 15, 2026, the Court granted Plaintiff's Motion for Leave to Amend. In doing so, the Court noted,

> **Importantly, however, while "tracking Rule 12(b)(6), Rule 15 futility does not contemplate substantive motion practice on the merits of the claims." Vitaworks IP, LLC v. Qianjiang Yongan Pharm. Co., 2018 WL 10152229, at \*2 (D.N.J. Nov. 5, 2018). Thus, "[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper." Id. (emphasis in original). In other words, where "arguments in opposition to a motion to amend overlap significantly with arguments [typical of] a motion to dismiss, [i]n the interests of judicial economy and in the absence of undue prejudice, the Court may decline to engage in a detailed futility analysis." Myles v. Securitas Sec. Servs., USA, Inc., 2025 WL 1431164, at \*4 (D.N.J. May 19, 2025). Simply put, while the inquiry is similar, the standard for a Rule 15 analysis is less demanding than Rule 12(b)(6).**

Dkt. 365, pp. 6 (emphasis in original).

The Court further ordered the Clerk to file Plaintiff's Proposed Amended Complaint on the docket as the operative Second Amended Complaint ("SAC"). Id.; Dkt. 366.

6

**STATEMENT OF FACTS**[2]

According to the SAC, Plaintiff was employed by CBRE as a Calibration Technician, "performing daily calibration, verification, troubleshooting, and measurement-integrity tasks within a GMP-regulated environment" at the worksite of CBRE client, BeiGene USA, Inc (now BeOne Medicines USA, Inc. and hereinafter "BeOne").[3] SAC, ¶¶ 24, 32. Plaintiff claims that his responsibilities included calibration of "temperature devices, pressure instruments, environmental sensors, automated lab instrumentation, [and] measurement systems used for pharmaceutical quality control." Id. at ¶ 33. Further, Plaintiff alleges he performed all his tasks "with precision and compliance consistent with GMP, FDA, and corporate quality-assurance standards." Id. at ¶ 34. The SAC also states that Plaintiff used a ThinkPad issued by BeOne to "complete calibration reports, SOP readings, system logs, and quality documentation." Id. at ¶ 35. Additionally, Plaintiff contends he developed a reputation for "strong technical performance, integrity, and accuracy among both CBRE and [BeOne] personnel." Id. at ¶ 36. Further, Plaintiff alleges that during his employment, he "identified systemic workflow deficiencies, audit-readiness gaps, and data-integrity vulnerabilities, informing the later creation of his independent invention." Id. at ¶ 37.

Purportedly between late 2024 and early 2025, Plaintiff developed "WattsProtect™" ("Invention"), which he claims is an "AI-driven calibration-

7

integrity, workflow-governance, and evidence-preservation architecture." Id. at ¶ 38. WattsProtect™ allegedly contains "confidential modules including: predictive calibration logic; audit-trail intelligence; chain-of-custody proof channels; diagnostic workflows; compliance-validation algorithms; [and] evidence-logging and integrity-tracking systems." Id. at ¶ 39. In conclusory fashion, Plaintiff claims the "Invention" qualifies as a trade secret, and that he maintained its confidentiality by using only personal devices, "restricting disclosure" preparing an NDA and issuing a legal hold demand to CBRE.  Additionally, the SAC states that on June 23, 2024, CBRE admitted in court that it did not claim ownership over Plaintiff's invention. Id. at ¶ 43.

Plaintiff alleges on May 5, 2025, he complied with "CBRE Policy 6.4" by submitting a formal disclosure to: Matt Miller ("Miller"), Patricia Gunn ("Gunn"), and Matthew Eastwood. Id. at ¶ 44. Plaintiff further claims he signed the "Policy 6.4 form," and in doing so "described the independent Invention; asserted the exclusive

---

[2] Although Plaintiff's allegations are presumed true for purposes of this Motion, Defendant does not concede the accuracy of same and expressly reserves the right to dispute any and all factual allegations.

[3] While BeOne's predecessor, "BeiGene USA, Inc.," was identified in the caption of various filings by Plaintiff, it was not named as a defendant in either the Initial Complaint or the FAC. See, Dkts. 1, 20. Plaintiff was further reminded of this fact, and that there was no claim asserted against BeOne in an Order denying various applications entered on June 13, 2025. See, Dkt. 97. The SAC also purports to name BeOne as a defendant to this action but fails to identify any claims against it. See, Dkt. 366. To date, BeOne has not been served. Regardless, to the extent the SAC is read to plead claims against BeOne, the defenses articulated herein as to CBRE are also available to BeOne.

ownership; requested confidential handling; requested proper review; [and] confirmed no CBRE resources were used." Id. at ¶¶ 45-46. Plaintiff further claims that "Policy 6.4" does not require an employee to "surrender ownership or disclosure [sic] confidential details of an invention absent safeguards." Id. at ¶ 47. The SAC further asserts Plaintiff acted in "good faith and fulfilled all requirements." Id. at ¶ 48. Plaintiff alleges that his supervisor, Miller, then falsely accused Plaintiff of having a "'conflict of interest.'" Id. at ¶ 50. Plaintiff also contends, in conclusory fashion, that Miller "pressured" him with an "ultimatum that he had to 'choose between the invention and the job.'" Id. at ¶ 51. Plaintiff claims he then filed an unspecified "internal retaliation complaint" on May 7th. Id. at ¶ 53.

Plaintiff alleges he attended a scheduled calibration meeting the morning of May 8, 2025, involving "CBRE staff member George Murray, [BeOne] personnel, [and] other CBRE technical participants." Id. at ¶ 55. Plaintiff asserts that during the meeting, Murray "slammed his hands on the table" which created a "loud, aggressive, and hostile disruption." Id. at ¶ 56. Plaintiff also claims that the meeting took place in a "GMP environment," which allegedly required "calm, controlled communication." Id. at ¶ 57. Plaintiff claims he thereafter, "intended to report the incident as a workplace-safety concern." Id. at ¶¶ 58-59.

Plaintiff further asserts that CBRE "interrogated" him about his Invention. Id. at ¶¶ 60-62. He alleges CBRE demanded access to "confidential material with no

NDA, no security safeguards and no legal basis." Id. at ¶ 63. Plaintiff also contends he was "pressured" to show portions of his invention on his personal cell phone. Id. at ¶ 64. Plaintiff claims he was then instructed by Miller to leave the worksite "with pay," but was not provided with a reason, written notice, or investigation basis to justify the removal. Id. at ¶¶ 67-70.

According to the SAC, Plaintiff did not receive his paycheck the following day. Id. at ¶ 72. He contends that "CBRE Payroll" informed him that the delay resulted from Miller's failure to approve Plaintiff's timesheet. Id. at ¶ 73. Plaintiff also alleges "CBRE People Services' repeatedly confirmed [that Plaintiff] was active, not suspended" and that "[BeOne] employee[,] Felix Kwafo[,] informed Plaintiff that an offboarding ticket had been opened." Id. at ¶¶ 74-75. The SAC further asserts that on May 15, Plaintiff submitted a "formal Non-Disclosure Agreement ("NDA"), and "issued a Rule 37(e) Legal Hold." Id. at ¶¶ 77-78. According to the SAC, CBRE terminated Plaintiff's employment on May 16, 2025. Id. at ¶ 80.

On June 3rd, Plaintiff claims he "learned of a false 'side hustle' rumor regarding his invention." Id. at ¶ 85. Thereafter on June 13, 2025, BeOne allegedly "attempted to retrieve Plaintiff's ThinkPad' from his home while CBRE still listed him as active." Id. at ¶ 86. Plaintiff contends the ThinkPad that was issued by BeOne contained "calibration data, evidence, and work records." Id. at ¶ 87. The SAC

10

further alleges that CBRE admitted to having no ownership over the Invention. Id. at ¶ 88. Additionally, Plaintiff claims that on June 30, 2025, the Court reaffirmed "Plaintiff's right to preserve evidence." Id. at ¶ 89.

## LEGAL STANDARD

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to "test[] the sufficiency of the allegations contained in the complaint." See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Moreover, the factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id.

When evaluating a motion to dismiss for failure to state a claim, the Court must conduct a "two-part analysis." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009). First, the Court must identify and disregard all "legal conclusions" or "naked assertions" contained in the complaint. Id.; see also Twombly, 550 U.S. at 555 (the grounds upon which the claim rests must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). Second, the Court must determine whether the remaining alleged facts in

the complaint state a claim to relief that is "plausible on its face." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 662; Twombly, 550 U.S. at 544). A claim has facial plausibility if, after looking at the complaint, the Court can draw a reasonable inference that the defendant is liable for the misconduct alleged. Twombly, 550 U.S. at 556. Specifically, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 678 (citation omitted).

Here, the SAC fails to set forth any valid cause of action for retaliation in violation of the Conscientious Employee Protection Act ("CEPA") (Count I), wrongful termination in violation of public policy pursuant to Pierce v. Ortho Pharmaceutical Corp (Count II), violation of the Defend Trade Secrets Act ("DTSA") (Count III), violation of the New Jersey Trade Secrets Act ("NJTSA") (Count IV), breach of contract (Count V), breach of the implied covenant of good faith and fair dealing (Count VI), violation of the New Jersey Wage Payment Law ("NJWPL") (Count VII), tortious interference with prospective economic advantage (Count VIII); and declaratory judgment pursuant to 28 U.S.C. §2201(a) (Count IX). In sum, the SAC is disjointed and inadequate, as it contains scant factual allegations, which utterly fail to establish any valid theory or claim for relief. See Dkt. 366. Accordingly, Plaintiff's Motion to Dismiss the Second Amended Complaint must be granted.

## LEGAL ARGUMENT

### POINT I

### THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM OF UNLAWFUL RETALIATION UNDER CEPA OR THE COMMON LAW

Counts I and II of the SAC purport to set forth claims of retaliation under CEPA and wrongful termination in violation of public policy pursuant to <u>Pierce v. Ortho Pharmaceutical Corp.</u>, 84 N.J. 58 (1980) ("<u>Pierce</u>"), respectively. These claims, however, are baseless. Plaintiff fails to allege that he had any reasonable belief that CBRE's conduct violated any law, rule, regulation or clear mandate of public policy. Moreover, the SAC fails to allege facts to demonstrate that Plaintiff engaged in any protected activity. Both deficiencies are fatal to Plaintiff's claims. Indeed, the threadbare, conclusory allegations set forth in the SAC are simply insufficient to meet the basic pleading requirements of Fed. R. Civ. P. 8, <u>Twombly</u> and <u>Iqbal.</u> Accordingly, Counts I and II of the SAC fail to articulate valid causes of action for retaliation and wrongful termination, requiring dismissal with prejudice as a matter of law.

### A. There is no valid claim for retaliation in violation of CEPA.

To plead a *prima facie* case of retaliatory discharge under CEPA, Plaintiff must allege that (1) he reasonably believed his employer's conduct violated either a law, rule, regulation or public policy; (2) he performed a "whistle-blowing"

activity described in N.J.S.A. § 34:19-39(a) or (c); (3) he suffered an adverse employment action; and (4) a causal connection existed between the whistle-blowing activity and the adverse employment action. Klein v. University of Med & Dentistry of N.J., 377 N.J. Super. 28, 38 (App. Div. 2005).

As a threshold matter, Plaintiff "must identify a law, rule, regulation, or clear mandate of public policy, that supports the basis of his CEPA claim as well as 'unacceptable practices in the defendant employer's business' that contravene the identified authority." Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 159–60 (3d Cir. 2017) (citing Hitesman v. Bridgeway, Inc., 218 N.J. 8, 34 (2014)). Indeed, when a plaintiff claims the employer's conduct is incompatible with public policy under N.J.S.A. § 34:19-3(c)(3), "the complained of activity must have public ramifications, and that the dispute between employer and employee must be more than a private disagreement." Maw v. Advanced Clinical Commc'ns, Inc., 179 N.J. 439, 445 (2004). To determine whether a plaintiff has presented a viable CEPA claim under section 3(a) or 3(c):

> a trial court must ***first*** identify and enunciate ***the specific terms*** of a statute, rule, regulation, declaratory ruling, professional code of ethics, or clear expression of public policy that the employee reasonably believes would be violated if the facts as alleged are true and determine that there is a substantial nexus between the complained-of conduct and the law or public policy identified by the court or the plaintiff.

14

Klein, 377 N.J. Super. at 40 (citing Dzwonar v. McDevitt, 177 N.J. 451, 464 (2003)) (emphasis added). If the court determines the plaintiff failed to establish a "substantial nexus between the complained-of conduct and a clear mandate of public policy identified," the court must grant the defendant's motion to dismiss. Hitesman, 218 N.J. at 31 (2014); see, e.g., Arterbridge v. Wayfair LLC, No. 21-13306, 2022 WL 577956, at *1 (D.N.J. Feb. 25, 2022) (granting defendant's motion to dismiss reasoning that plaintiff failed to identify a violation of a clear mandate of public policy); Safonof v. DirectSat USA, No. 19-07523, 2020 WL 1527946, at *3-4 (D.N.J. Mar. 31, 2020) (finding that the complaint failed to state a claim because it provided a "conclusory statement" that Defendant's actions violated nine laundry listed statutes, and did "not plainly specify the ways in which said statutes were violated").

Here, Plaintiff's purported CEPA claim fails to state a viable cause of action because the SAC does not allege that Plaintiff reasonably believed CBRE's conduct violated a law, rule or regulation, or was in contravention of public policy; nor does the SAC set forth facts showing that Plaintiff engaged in any activity protected by CEPA. Instead, the SAC offers only conclusory statements that Plaintiff engaged in protected activity.[4] In reality, none of the alleged facts indicate how the complained

---

[4] The SAC specifically alleges, Plaintiff engaged in the following "protected activity:" (a) "submitted his May 5 'Policy 6.4' disclosure identifying potential ethical violations and seeking correct compliance;" (b) "reported the hostile May 8 incident involving CBRE employee George

15

of conduct implicated any statute, rule, regulation, or clear public policy, which is fatal to Plaintiff's claims.

### 1. Plaintiff's Submission of a "Policy 6.4 Disclosure," and Alleged Complaints of an "Ultimatum," "Coerced Interrogation" and "Improper Access Demands" Are Not Protected Activity

The SAC alleges that he made disclosures pursuant to "Policy 6.4," an internal CBRE policy. Plaintiff, however, fails to articulate any facts to show how compliance with that internal policy would implicate any statute, rule, regulation or public policy. Likewise, Plaintiff's purported objection to CBRE's alleged "coerced interrogation" regarding Plaintiff's "Invention" amounts to nothing more than a private workplace dispute and is therefore not actionable. See, Maw, 179 N.J. at 445 ("the complained of activity must have public ramifications, and that the dispute between employer and employee must be more than a private disagreement"); Klein, 377 N.J. Super. at 45 ("CEPA was enacted to prevent retaliatory action by an employer against an employee who 'blows the whistle on illegal or unethical activity committed by their employers or co-employers,' not to assuage egos or settle internal disputes at the workplace") (internal citations omitted); Young v. Schering Corp., 275 N.J. Super. 237 (App. Div. 1994) (CEPA "was not intended to provide a remedy for wrongful discharge for employees who simply disagree with an employer's

---

Murray;" (c) "objected to CBRE's coerced interrogation and improper access demands;" (d) "issued an NDA on May 15;" (e) "issued a Rule 37(e) Legal Hold on May 15;" and (f) "filed internal retaliation complaints." Dkt. 266, ¶ 92 (a)-(f).

decision, where that decision is entirely lawful."), aff'd, 141 N.J. 16 (1995).

Similarly, Plaintiff alleges he engaged in protected activity by filing a vague "internal retaliation complaint" following an alleged "ultimatum" between choosing his job or working on his invention. Setting aside that Plaintiff's allegations are couched entirely in conclusory terms, a complaint relating to such an "ultimatum" does not implicate any law, rule, regulation, or public policy. Indeed, in the State of New Jersey, employers may limit an employee's external activities outside of the workplace to the extent engaging in such activities would present a conflict of interest for the employee in violation of an employee's duty of loyalty to the employer. See Lamorte Burns & Co. v. Walters, 167 N.J. 285, 302 (2001) ("An employee must not while employed act contrary to the employer's interest."). While the nature of the pleading is disjointed and unclear, it appears the SAC attempts to articulate that Plaintiff complained about CBRE's finding that Plaintiff's "Invention" created a conflict of interest with his employment. Such a complaint simply does not constitute protected activity, because there is no substantial nexus to any law, rule, regulation or public policy.

### 2. Plaintiff's Complaint Relating to Alleged Conduct of George Murray Is Not Protected Activity

Plaintiff's allegation that he intended to complain about Murray allegedly "slamming his hands on Plaintiff's desk" as a workplace safety concern also does not constitute protected activity under CEPA as a matter of law. As a threshold

17

matter, Plaintiff does not even allege that he made a complaint, but merely that he "intended" to do so. Mere intention cannot, by definition, be considered protected *activity*. Accordingly, Plaintiff's claim regarding George Murray's alleged conduct fails.

Even if Plaintiff's SAC were read so liberally to assume that Plaintiff did complain about Murray's alleged conduct, Plaintiff still fails to articulate any protected activity. Plaintiff's conclusory description of the alleged incident as a violation of "workplace safety" is simply insufficient to sustain a CEPA retaliation claim. See Flear v. Glacier Garlock Bearings, a Div. of Enpro Indus., Inc., 159 F. App'x 390, 392-393 (3d Cir. 2005) (holding that plaintiff failed to establish CEPA retaliation claim where the basis of plaintiff's complaint was based on his "perception of compliance with EHS standards" rather than actual violations of law or OSHA compliance standards.); Klein, 377 N.J. Super. at 42 ("merely couching complaints in terms of a broad-brush allegation of a threat to patients' safety is insufficient to establish the first prong of a CEPA claim."). Although this alleged incident might have made Plaintiff feel uncomfortable, it did not rise to an actionable conduct under CEPA. See Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 559 (2013) ("complaints about trivial or minor matters, or generalized workplace unhappiness are not the sort of things that the Legislature intended to be protected by CEPA"); Vasough v. Kierce, 437 N.J. Super. 218, 225 (App. Div. 2014)

18

(recognizing that New Jersey law does not recognize a "cause of action for a hostile work environment simply because an employee is mistreated by a nasty boss" or "protect employees generally against an unpleasant work environment, or the failure of the employer to address incivility in the workplace."). Accordingly, the SAC alleges no facts explaining how Murray's alleged conduct implicated a workplace safety concern, nor how it violated any law or public policy.

To the extent Plaintiff alleges that Murray's purported conduct violated "GMP" regulations, the SAC does not even identify what GMP references. Even so, if the SAC is read so liberally to mean a reference to the United States Food and Drug Administration's Current Good Manufacturing Practice (CGMP) Regulations, 21 C.F.R. §§ 210–212 — which is entirely speculative — those regulations do not govern internal workplace disputes, nor does the SAC allege any facts connecting the alleged conduct to any purported GMP violation. Accordingly, any alleged complaints relating to Murray's alleged conduct cannot constitute protected activity as a matter of law.

### 3. <u>Providing a Legal Hold Notice or an NDA to an Employer Is Not Protected Activity</u>

The SAC also fails to set forth any facts to suggest that issuing a legal hold or providing an employer with an NDA can be considered protected activity under CEPA. Indeed, protected activity under CEPA requires an employee to **disclose or threaten to disclose**, or to **object to or refuse to participate in,** conduct the

19

employee reasonably believes violates a law, rule, regulation, or clear mandate of public policy. See Maw, 179 N.J. at 443–44. ("CEPA prohibits an employer from taking retaliatory action against an employee who "**objects to, or refuses to participate** in any activity, policy or practice which…") (emphasis added); Fioriglio v. City of Atl. City, 996 F. Supp. 379, 393 (D.N.J. 1998), aff'd, 185 F.3d 861 (3d Cir. 1999) ("To succeed on a CEPA claim, a plaintiff must show (1) that **he disclosed or threatened to disclose** the activity to a supervisory or public body…") (emphasis added). Issuing an NDA to protect a personal invention does not meet this definition. Similarly, the act of sending a litigation hold notice in anticipation of potential litigation as Plaintiff attempts to plead, does not indicate that he disclosed or threatened to disclose illicit activity or objected to any illicit activity under CEPA. Rather, given the facts as pleaded, Plaintiff merely placed Defendant on notice that certain documents should be preserved, or sanctions could otherwise be issued under applicable Court Rules. There is simply no allegation of any alleged complaint of illegal activity.

### 4. Plaintiff's Vague and Unspecified "Internal Complaints" Do Not Constitute Protected Activity.

As a last-ditch effort, Plaintiff alleges as a catch-all that he made "internal retaliation complaints" that constitute protected activity. This allegation is purely conclusory and therefore must be excluded as improper for purposes of determining whether the allegations state a viable claim under Twombly and Iqbal. The overly

20

generalized and vague assertions of "retaliation complaints" are simply insufficient to plead a cause of action under CEPA. Accordingly, because Plaintiff has not sufficiently alleged that he engaged in protected activity under CEPA, the SAC fails to state a CEPA claim as a matter of law.

**B. There Is No Valid Common Law Claim For Wrongful Termination.**

Like a CEPA claim, under <u>Pierce</u>, an employee may only maintain a cause of action for wrongful discharge "when the discharge is contrary to a clear mandate of public policy." <u>Pierce v. Ortho Pharmaceutical Corp.</u>, 84 N.J. 58, 72 (1980). Failure to allege a "clearly enunciated public policy," however, warrants dismissal of a common law wrongful discharge claim. <u>Jenkins v. Region Nine Housing Corp.</u>, 306 N.J. Super. 258, 263 (App.Div.1997), <u>certif.</u> <u>denied</u>, 153 N.J. 405 (1998). Further, a dispute that is private in nature does not implicate a public policy sufficient to overcome the at-will employment doctrine. <u>See</u> <u>Maw</u>, 179 N.J. 439, 445 (2004) (holding that the offensive activity "must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee"). The New Jersey Supreme Court further articulated the limitation of <u>Pierce</u> claims in <u>Tartaglia v. UBS PaineWebber, Inc.</u>, 197 N.J. 81 (2008):

> An employer remains free to terminate an at-will employee who engages in grousing or complaining about matters falling short of a 'clear mandate of public policy' or who otherwise interferes with the ordinary operation of the workplace by expressions of personal views on matters of no real substance. **Baseless complaints or expressions**

21

**of purely personal views about the meaning of public policies will not meet the test for a 'clear mandate' regardless of the manner or mode in which they are voiced.**

Id. at 109 (emphasis supplied).

Moreover, to plead a Pierce claim, a plaintiff must set forth facts to establish "not only that he or she complained about a public policy, but that his or her resulting discharge violated a clear mandate of public policy." Id. at 112.

Plaintiff's Pierce claim fails because, as outlined above, the SAC fails to identify a specific "clear mandate of public policy" that CBRE allegedly violated, nor does it sufficiently articulate protected activity even remotely linked to a clear mandate of public policy. Although Plaintiff claims his termination was unlawful because he acted in furtherance of "workplace safety; data integrity; confidentiality rights; trade secret protections; [and] Rule 37(e) preservation duties," the SAC again fails to identify any true public policy mandate linked to the activity in which Plaintiff alleges he engaged. As such, the SAC does not plead facts sufficient to state a valid cause of action for retaliation pursuant to CEPA or Pierce. Thus, Counts I and II of the SAC must be dismissed as a matter of law.

## POINT II

**THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION UNDER EITHER THE DTSA OR THE NJTSA**

22

Plaintiff has not and cannot establish a claim under the DTSA (Count III) or NJTSA (Count IV).  In order to state a claim under the DTSA, Plaintiff must demonstrate: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret…; (2) that 'is related to a product or service used in, or intended for use in, interstate or foreign commerce…; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." Oakwood Laboratories LLC v. Thanoo, 999 F.3d 892, 905 (3d Cir. 2021) (citing 18 U.S.C. § 1839 and § 1836). Similarly, under the NJTSA, a trade secret is defined as "information … that: (1) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.J.S.A. § 56:15-2. As the NJTSA is "substantially similar" to the federal Defend Trade Secrets Act (the "DTSA"), the analysis of a NJTSA claim is the same as under the DTSA. See Oakwood Laboratories LLC, 999 F. 3d at 905 n.11 ("Because the DTSA and the NJTSA are substantially similar ... and ... include identical or almost identical definitions for each statutory term at issue here, our analysis of the DTSA also applies to ... the NJTSA."). As such, Defendant will address Plaintiff's DTSA and NJTSA claims together.

Just as the Court found with respect to the DTSA claim in the Initial Complaint, the SAC fails to establish the elements of a trade secret misappropriation claim. See Dkt. 18. First, Plaintiff does not clearly identify a trade secret as required by both the DTSA and NJTSA. His bald assertion that WattsProtect is a trade secret is purely conclusory and does not include the requisite details to demonstrate his purported invention is a trade secret. Instead, the SAC merely recites generic characteristics — "unique calibration-integrity layers," "non-public design," "economic value," and "reasonable secrecy measures (NDA, legal hold, private development)" — but offers no factual detail separating the alleged secret from matters of general knowledge or from the specialized knowledge of calibration technicians. It is black letter law that such boilerplate allegations are insufficient. Indeed, a plaintiff must describe the alleged trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" Oakwood Laboratories, LLC , 999 F.3d at 906 (internal citations omitted). Given that Plaintiff's allegations do not identify any specific action, process, method, or formula that is required to plead the existence of a trade secret, he cannot state a viable cause of action under either the DTSA or NJTSA. Id. at 900 (noting that plaintiff's trade misappropriation claim was initially dismissed because it failed to identify a "specific action, process, or

24

formula" of the alleged trade secret at issue).

Moreover, the SAC is devoid of any facts that show Plaintiff tried to keep his alleged trade secret confidential. Indeed, according to the SAC, Plaintiff disclosed his purported invention even without ensuring an NDA was executed. Furthermore, Plaintiff has not alleged any facts showing that the alleged trade secrets derive any independent economic value. The SAC's mere recitation of the elements of the DTSA/NJTSA is not sufficient. Iqbal, 556 U.S. at 679; see also, Jiaherb, Inc. v. MTC Indus., Inc., No. 18-15532 (KSH) (CLW), 2023 WL 3249822, at *3 (D.N.J. May 4, 2023) (finding defendant failed to allege the alleged trade secret derived independent economic value, because defendant did not allege any facts about the unique pricing of the product at issue, or whether the product was formulated differently than others available on the market).

The SAC also fails to allege that CBRE misappropriated Plaintiff's alleged trade secret. Plaintiff merely states CBRE: "demanded [him to] reveal confidential components without any NDA, under threat of job loss," "coerced [him] to reveal the Invention from his personal cell phone during the May 8 interrogation," "attempted to access, obtain, or replicate the Invention for internal review without authorization," and that "[t]ermination immediately [followed] after Plaintiff formalized trade-secret protections (NDA, Legal Hold)." However, none of these allegations articulate that CBRE misappropriated the trade secret through

acquisition,[5] disclosure or use. 18 U.S.C. § 1839(5), N.J.S.A. § 56:15-2. Rather, Plaintiff simply alleges that CBRE temporarily viewed the alleged "Invention" on Plaintiff's phone. Plaintiff fails to allege that CBRE somehow took possession of, disclosed, or used the alleged trade secret. Accordingly, neither a DTSA, nor NJTSA claim can stand.

Moreover, the DTSA defines "improper means" to include conduct such as theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage. 18 U.S.C. § 1839(6)(A). The term does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." Id. The NJTSA describes "improper" in similar fashion. See N.J.S.A. § 56:15-2. Furthermore, the Third Circuit holds that "use" under the DTSA, "encompasses all the ways one can take advantage of trade secret information **to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose**." Id. at 910. (emphasis added).

Here, the SAC fails to articulate facts to show that CBRE attempted to use Plaintiff's alleged trade secret for commercial value, or another exploitative purpose. Nor does the SAC explain how CBRE's alleged conduct constitutes "improper means" under the DTSA or the NJTSA. Without such basic allegations, Plaintiff cannot sustain his claims of misappropriation under the DTSA or the NJTSA.

---

[5] To acquire is "to gain possession or control of." Acquire, Black's Law Dictionary (12th ed. 2024).

Finally, as to the DTSA, the SAC fails to articulate any facts to demonstrate that Plaintiff's alleged trade secret is related to a product or service, or intended for use in interstate or foreign commerce.

Given that Plaintiff has failed to articulate facts sufficient to plead the elements of a trade misappreciation claim under the DTSA and NJTSA, Counts III and IV of the SAC must be dismissed as a matter of law.

## POINT III

### THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM OF BREACH OF CONTRACT

Plaintiff has also failed to plead a viable breach of contract claim.  To state a claim for breach of contract in New Jersey, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). Significantly, "[i]n order for a valid contract to exist, Plaintiff must show mutual assent, consideration, legality of the object of the contract, capacity of the parties and formulation of memorialization." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 421 F. Supp. 2d 831, 833 (D.N.J. 2006), aff'd, 482 F.3d 247 (3d Cir. 2007) (citing Cohn v. Fisher, 118 N.J. Super. 286, 291 (1972)). "A contracting party is bound by the apparent intention he outwardly manifests to the other

27

contracting party." Id. at 83, Presbyterian Church in Newark v. Howard Company–Jewelers, 12 N.J. 410, 414 (1953).

Here, Plaintiff continues to assert the basis of his breach of contract claim is that Defendant allegedly breached an NDA Plaintiff ***provided to*** CBRE. However, just as in Plaintiff's Initial Complaint, the SAC does not contain any allegation to demonstrate mutual assent as to the terms of the NDA. The SAC fails to allege that Defendant signed the NDA, otherwise manifested agreement to its terms, or that the parties reached a meeting of the minds on any essential provision. This Court previously dismissed the breach of contract claim raised in the Initial Complaint for these same reasons. Dkt. 18, p. 7-8 ("Plaintiff here merely alleges that he 'submitted a formal...NDA to CBRE leadership' and that, essentially, CBRE never got back to him about it."). The SAC does not rectify this fatal flaw – "Plaintiff does not indicate that any Defendant ever agreed to the NDA or accepted to be bound by its terms." Dkt. 18, p. 8.

Furthermore, Plaintiff does not identify which provision of the NDA was allegedly breached, let alone how it was breached. The SAC instead proffers vague assertions that CBRE breached the NDA by "continuing to discuss the Invention internally; continuing to interrogate Plaintiff; taking adverse action (termination) within 24 hours; [and] attempting laptop retrieval to access confidential data." Even if Plaintiff had sufficiently articulated assent, which he cannot, the SAC lacks

28

sufficient specificity as to the terms of the NDA, or how the above conduct breached the alleged NDA. Accordingly, Plaintiff has failed to plead a claim for breach of contract as a matter of law. Finally, Plaintiff's allegation of damages remains conclusory—Plaintiff simply states "damages include lost wages, emotional distress, reputational harm, and the value of confidentiality rights" without alleging any specific facts showing a cognizable loss caused by the alleged breach. This is insufficient.

As such and because the SAC does not plausibly plead contract formation, a specific breach, or resulting damages, Count V must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**POINT IV**

**THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM OF BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Just as Plaintiff failed to plead a breach of contract claim, he also cannot plead a violation of the implied covenant of good faith and fair dealing. To recover for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages. Luongo v. Vill. Supermarket, Inc., 261 F. Supp. 3d 520, 531–32

29

(D.N.J. 2017). Here, Plaintiff cannot establish breach of the implied covenant of good faith and fair dealing because Plaintiff has not articulated facts to plead that there was a valid contract between Plaintiff and Defendant. See Pinnix v. The Fielding Inst., 53 F. App'x 204, 205 (3d Cir. 2002) (affirming that if "no contract existed there can be no breach of an implied covenant of that contract."). Plaintiff's allegations that CBRE acted in bad faith by "misusing Policy 6.4; creating false conflicts claims; withholding wages; opening hidden offboarding tickets; issuing contradictory HR classification statements; [and] terminating Plaintiff within 24 hours of asserting protected rights," does nothing to show there was an underlying contract between Plaintiff and Defendant.   To the extent, Plaintiff alleges that the NDA he provided to CBRE is the basis of his breach of implied covenant claim, Plaintiff has not and cannot allege that CBRE accepted the provisions in the NDA. As no other purported contract is even referenced by Plaintiff, Count VI of the SAC must be dismissed with prejudice.

## POINT V

### THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW

The SAC also does not state a claim under the New Jersey Wage Payment Law ("NJWPL"). The NJWPL "governs the time and mode of payment of wages due to employees," and requires employers to pay wages at certain regular intervals.

Maia v. IEW Constr. Grp., 257 N.J. 330, 344 (2024) (quoting Hargrove v. Sleepy's, LLC, 220 N.J. 289, 302-303 (2015); Ortez v. Beta Elec. ELP, LLC, No. 23-3693 (JXN)(MAH), 2025 WL 2169973, at *6 (D.N.J. July 31, 2025); N.J.S.A. § 34:11-4.2. Plaintiff fails to state a claim for violation of the New Jersey Wage Payment Law because: 1) the Court will be deprived of subject matter jurisdiction; and 2) the SAC fails to articulate facts sufficient to plead a viable claim under the NJWPL.

### A. The NJWPL Claim Must Be Dismissed for Want of Jurisdiction

As a threshold matter, assuming *arguendo* that Plaintiff could plead a viable claim for violation of the NJWPL, which he cannot, this Court would be deprived of jurisdiction over the claim. "The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004). The Supreme Court has clearly stated that "the rule for determining whether the case involves the requisite amount as whether 'from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount.' If not, the suit must be dismissed. Id. at 397 (3d Cir. 2004) (quoting St. Paul Mercury Indemn. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).

Here, the SAC fails to plead facts sufficient to even suggest that damages

31

resulting from an alleged singular "untimely wage payment" would exceed the diversity jurisdictional threshold of $75,000. 28 U.S.C. §1332(a).[6] Without supplemental jurisdiction, which would not exist because all other causes of action identified in the SAC fail to state a claim as a matter of law, the NJWPL claim must necessarily be dismissed for want of jurisdiction. Accordingly, even if Plaintiff could set forth facts sufficient to plead a claim for an NJWPL violation, which he cannot do, the Complaint must still be dismissed under Fed. R. Civ. P. 12(b)(1).

### B. The SAC Fails to Plead Sufficient Facts to Establish a NJWPL Claim

Notwithstanding the lack of jurisdiction, the renewed SAC still fails to allege sufficient facts to plead that CBRE violated the NJWPL. In support of his proposed claim, Plaintiff asserts the following disjointed allegations: "Plaintiff did not receive his May 9 paycheck"; "CBRE Payroll confirmed the delay was due to Miller's failure to approve the timesheet"; "CBRE failed to pay wages due on the regular payday, violating the Wage Payment Act." These allegations do not identify any violation, let alone with the requisite specificity, to determine which provision of the

---

[6] N.J.S.A. § 34:11-4.10(c) authorizes recovery of the "full amount of any wages due" plus liquidated damages of up to 200% and reasonable attorneys' fees and costs. As Plaintiff is proceeding *pro se* and therefore has not incurred attorneys' fees and costs, Plaintiff would have to plead that the "full amount of any wages due" exceeded $25,000 to surpass the jurisdictional threshold, which he does not and cannot do. See Boyadjian v. CIGNA Companies, 973 F.Supp. 500 (D.N.J. 1997) (summarizing precedent that a *pro se* litigant may not be awarded statutory "attorneys' fees" under analogous provisions); Fink v. Bishop, No. 23-566 (CPO) (MJS), 2024 WL 3084409, at *3 (D.N.J. June 21, 2024) ("It is well-settled that *pro se* litigants generally are not entitled to recover attorneys' fees.")(citing Kay v. Ehrler, 499 U.S. 432, 435 (1991); Zucker v. Westinghouse Elec., 374 F.3d 221, 228 (3d Cir. 2004)).

NJWPL Plaintiff contends was violated. Additionally, Plaintiff does not define the pay period at issue, nor identify when the alleged "delayed" payment was ultimately received, if at all. As discussed above, threadbare recitals and conclusory assertions do not satisfy the pleading standard to state a claim. See Ashcroft, 556 U.S. at 679; see also, Sirin v. Portx, Inc. No. 20-7853 (SRC), 2020 WL 6194018, at *4 (D.N.J. Oct. 22, 2020) (dismissing a NJWPL claim where the complaint "fails to provide any notice of the source of the rights asserted and the statutory cause of action invoked.").

Because the SAC fails to plead sufficient facts to establish a specific statutory violation under the NJWPL in addition to the jurisdictional defect, Count VII must be dismissed.

### POINT VI

### THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM OF TORTIOUS INTERFERENCE

Plaintiff's tortious interference claim is also insufficient to state a valid cause of action, as Plaintiff fails to plead facts to allege that CBRE interfered with any prospective employment. To state a tortious interference claim under New Jersey law, a plaintiff must demonstrate: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages. MacDougall v. Weichert, 144 N.J. 380, 404 (1996). Plaintiff alleges that

33

he had a "prospective future in calibration, GMP integrity, and AI-governance opportunities." Further, he claims CBRE interfered with these roles through "false conflict statements; escalated retaliation; misrepresentation to BeiGene; misuse of authority; [and] termination." These allegations cannot sustain a claim against CBRE for tortious interference.

First, the SAC fails to mention any existing or prospective economic or contractual relationship with which CBRE allegedly interfered with any level of specificity or beyond pure speculation, let alone that he had any reasonable expectation of economic advantage. See Novartis Pharms. Corp. v. Bausch & Lomb, Inc., No. 07-5945 (JAG), 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008) (holding that a plaintiff's "speculative claim of lost business, if unsupported by facts showing an existing or reasonably prospective economic or contractual relationship, does not suffice."). Plaintiff instead claims in purely speculative fashion that he had a "future" in "calibration, GMP integrity, and AI-governance opportunities." The future "roles" that Plaintiff lists in the SAC are vague and do not identify what prospective business was allegedly pending or what contracts were allegedly in place. Further, Plaintiff fails to allege how CBRE interfered with said "roles." Rather, the description of the alleged interference is woefully insufficient because Plaintiff simply relies on conclusory and vague allegations. Plaintiff does not allege that CBRE had any knowledge of his alleged expectation of economic advantage, nor does he articulate

34

any facts showing a reasonable probability that, but for CBRE's alleged interference, Plaintiff would have realized a definite economic benefit. Plaintiff does not even allege CBRE's purported interference caused him any specific damages. Failure to allege these facts is fatal to Plaintiff's claims.

As the SAC only offers threadbare, conclusory allegations regarding the alleged interference of CBRE or any expected economic advantage or contract, Plaintiff fails to plead a valid claim of tortious interference and Count VIII must therefore be dismissed as a matter of law.

## POINT VII

### THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR A DECLARATORY JUDGMENT

Lastly, Plaintiff's attempt to plead a claim for a declaratory judgment fails as a matter of law. As this Court has already stated when dismissing the Initial Complaint, a claim for declaratory judgment is "not an independent cause of action." See Dkt. 18. (citing Doe v. Rider University, No. 16-4882, 2018 WL 466225, at *18 (D.N.J. Jan. 17, 2018) (citing Weaver v. Wilcox, 650 F.2d 22, 25 (3d Cir. 1981)). Given that a declaratory judgment is a remedy, and Plaintiff has failed to set forth any valid cause of action in the SAC, the claim for declaratory judgment fails as a matter of law. See In re AZEK Bldg. Prods., Inc., Mktg. & Sales Pracs. Litig., 82 F. Supp. 3d 608, 625 (D.N.J. 2015) ("The Court agrees with Defendant that the

35

declaratory judgment cause of action alleged by Plaintiffs does not provide a substantive basis for relief. An independent count for declaratory judgment adds nothing to this case.")

It is therefore for the reasons articulated above that the claims asserted in the SAC cannot withstand basic scrutiny and fail to state a claim as a matter of law. Accordingly, Defendant's Motion to Dismiss for Failure to State a Claim must be granted, and the SAC dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court grant Defendant's Motion to Dismiss the Second Amended Complaint with prejudice for failure to state a claim upon which relief can be granted.

**NUKK-FREEMAN & CERRA, P.C.**

*Attorneys for Defendant CBRE Group, Inc.*

By:      */s/ Jennifer Casazza Carter*
Jennifer Casazza Carter, Esq.
Kerrie R. Heslin, Esq.
Naomi Gulama, Esq.
26 Main Street, Suite 202
Chatham, NJ 07928
kheslin@nfclegal.com
jcarter@nfclegal.com
ngulama@nfclegal.com
Telephone: (973) 665-9100
Facsimile: (973) 665-9101

Dated: April 29, 2026