UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANDRE JASON WATTS,
Plaintiff Pro Se,

v.

CBRE GROUP, INC. and BEIGENE USA, INC.,
Defendants.

Civil Action No.: 3:25-cv-04483-RK-JTQ

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CBRE GROUP, INC.'S MOTION TO DISMISS THE OPERATIVE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT
SUMMARY OF ARGUMENT
PROCEDURAL POSTURE
LEGAL STANDARD
ARGUMENT
I. CBRE'S MOTION DEPENDS ON A FRAGMENTED READING OF THE SAC RATHER THAN THE REQUIRED WHOLE-PLEADING ANALYSIS
II. PLAINTIFF PLAUSIBLY PLEADS A CEPA CLAIM
A. The DTSA and NJTSA Provide the Clearest Public-Policy Anchor for Count I
B. The SAC Pleads Protected Activity, Employer Knowledge, Adverse Action, and Causation
C. The May 8 Murray Incident Supports Pretext and Retaliatory-Motive Inferences
D. CBRE's Authorities Do Not Require Dismissal
III. PLAINTIFF PLAUSIBLY PLEADS WRONGFUL TERMINATION UNDER PIERCE
IV. PLAINTIFF PLAUSIBLY PLEADS TRADE-SECRET CLAIMS UNDER THE DTSA AND NJTSA
A. The SAC Identifies Trade-Secret Boundaries Without Publicly Disclosing the Secret
B. The SAC Pleads Reasonable Secrecy Measures
C. The SAC Pleads Access-Related Conduct Under Improper Circumstances
D. The SAC Pleads Independent Economic Value and an Interstate-Commerce Nexus
V. PLAINTIFF PLAUSIBLY PLEADS BREACH OF CONTRACT, OR AT MINIMUM A CURABLE IMPLIED-IN-FACT CONFIDENTIALITY THEORY
VI. PLAINTIFF PLAUSIBLY PLEADS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, OR AT MINIMUM A CURABLE DERIVATIVE CONTRACT THEORY
VII. PLAINTIFF PLAUSIBLY PLEADS A NEW JERSEY WAGE PAYMENT LAW CLAIM, AND CBRE'S JURISDICTION ARGUMENT FAILS IF ANY FEDERAL CLAIM SURVIVES
VIII. COUNT VIII SHOULD NOT BE DISMISSED WITH PREJUDICE
IX. DECLARATORY RELIEF SHOULD BE PRESERVED AS A REMEDY IF ANY UNDERLYING CLAIM OR LIVE CONTROVERSY SURVIVES
X. DISMISSAL WITH PREJUDICE IS UNWARRANTED
CONCLUSION

**TABLE OF AUTHORITIES**

**Cases**

*Abramson v. William Paterson College,*
260 F.3d 265 (3d Cir. 2001)

*Alston v. Parker,*
363 F.3d 229 (3d Cir. 2004)

*Arterbridge v. Wayfair LLC,*
No. 21-13306, 2022 WL 577956 (D.N.J. Feb. 25, 2022)

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)

*Battaglia v. United Parcel Serv., Inc.,*
214 N.J. 518 (2013)

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)

*Comprehensive Neurosurgical, P.C. v. The Valley Hospital,*
257 N.J. 33 (2024)

*Dzwonar v. McDevitt,*
177 N.J. 451 (2003)

*Erickson v. Pardus,*
551 U.S. 89 (2007)

*Flear v. Glacier Garlock Bearings,*
159 F. App'x 390 (3d Cir. 2005)

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009)

*Frederico v. Home Depot,*
507 F.3d 188 (3d Cir. 2007)

*Fuentes v. Perskie,*
32 F.3d 759 (3d Cir. 1994)

*Grayson v. Mayview State Hosp.,*
293 F.3d 103 (3d Cir. 2002)

*Haines v. Kerner,*
404 U.S. 519 (1972)

*Hitesman v. Bridgeway, Inc.,*
218 N.J. 8 (2014)

*Ho-Ho-Kus, Inc. v. Sucharski,*
No. 2:23-cv-01677, ECF No. 55 (D.N.J. Nov. 1, 2024)

ii

*Klein v. Univ. of Med. & Dentistry of N.J.,*
377 N.J. Super. 28 (App. Div. 2005)

*MacDougall v. Weichert,*
144 N.J. 380 (1996)

*Maw v. Advanced Clinical Commc'ns, Inc.,*
179 N.J. 439 (2004)

*Oakwood Laboratories LLC v. Thanoo,*
999 F.3d 892 (3d Cir. 2021)

*Phillips v. County of Allegheny,*
515 F.3d 224 (3d Cir. 2008)

*Pierce v. Ortho Pharm. Corp.,*
84 N.J. 58 (1980)

*Printing Mart-Morristown v. Sharp Elecs. Corp.,*
116 N.J. 739 (1989)

*Safonof v. DirectSat USA,*
No. 19-07523, 2020 WL 1527946 (D.N.J. Mar. 31, 2020)

*Sons of Thunder, Inc. v. Borden, Inc.,*
148 N.J. 396 (1997)

*Troy v. Rutgers,*
168 N.J. 354 (2001)

*Young v. Township of Irvington,*
629 F. App'x 352 (3d Cir. 2015)

**Statutes and Rules**

18 U.S.C. § 1836

18 U.S.C. § 1836(b)(1)

18 U.S.C. § 1839

18 U.S.C. § 1839(3)

18 U.S.C. § 1839(5)

18 U.S.C. § 1839(6)(A)

21 C.F.R. Parts 210, 211, and 212

28 U.S.C. § 1331

28 U.S.C. § 1367

28 U.S.C. § 2201

Fed. R. Civ. P. 8

Fed. R. Civ. P. 12(b)(1)

iii

iv

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 15(a)(2)

Fed. R. Civ. P. 37(e)

N.J.S.A. § 34:11-4.1 et seq.

N.J.S.A. § 34:19-3

N.J.S.A. § 56:15-2

## PRELIMINARY STATEMENT

This is a case about what happens when an employee in a regulated pharmaceutical-quality environment asserts confidentiality rights over independent technical work, requests safeguards before disclosure, resists access demands made in the context of alleged employment pressure, and is terminated eleven days later.

Defendant CBRE Group, Inc.'s Motion should be denied.

This opposition addresses the operative Amended Complaint filed pursuant to the Court's April 15, 2026 Order, ECF No. 365. CBRE refers to that pleading as the Second Amended Complaint. For consistency with CBRE's Motion, Plaintiff refers to the operative pleading as the "SAC."

Plaintiff does not amend the SAC through this opposition. Plaintiff does not rely on new evidence, new factual allegations, or a new pleading theory outside the operative pleading. Plaintiff relies on the SAC, the Rule 12 standard, CBRE's own characterization of the SAC, and the procedural record properly before the Court.

CBRE's Motion repeatedly relies on collateral procedural history and characterizations of Plaintiff's litigation conduct, but those matters do not replace the Rule 12 analysis of the operative SAC. Rule 12(b)(6) tests whether the SAC, accepted as true and read as a whole, states plausible claims for relief.

Because CBRE alone filed the present Motion, this opposition addresses CBRE's arguments only. Plaintiff does not waive, withdraw, abandon, or concede any allegation concerning BeiGene USA, Inc., the worksite, the ThinkPad, offboarding communications, the June 13 retrieval attempt, or any other matter pleaded in the SAC.

The SAC pleads a specific chronology. Plaintiff alleges that he worked as a Calibration Technician in a GMP-regulated environment performing calibration, verification, troubleshooting, measurement-integrity, SOP, system-log, and quality-documentation work. SAC ¶¶ 32-37. Plaintiff alleges that he identified systemic workflow deficiencies,

1

audit-readiness gaps, and data-integrity vulnerabilities that informed the later creation of WattsProtect™. SAC ¶ 37. Plaintiff further alleges that WattsProtect™ is an AI-driven calibration-integrity, workflow-governance, and evidence-preservation architecture containing confidential modules including predictive calibration logic, audit-trail intelligence, chain-of-custody proof channels, diagnostic workflows, compliance-validation algorithms, and evidence-logging and integrity-tracking systems. SAC ¶¶ 38-41.

Plaintiff alleges that he disclosed the invention through CBRE's internal Policy 6.4 process on May 5, 2025; asserted exclusive ownership; requested confidential handling; requested proper review; and confirmed no CBRE resources were used. SAC ¶¶ 44-48. Plaintiff then alleges that, within days, CBRE accused him of a conflict of interest, pressured him to choose between the invention and his job, received an internal retaliation complaint, subjected him to an invention-focused interrogation, demanded access to confidential material without an NDA or safeguards, pressured him to show portions of the invention on his personal phone, removed him from the worksite, delayed or interfered with wages, generated contradictory HR/offboarding signals, and terminated him shortly after he submitted an NDA and Rule 37(e) Legal Hold. SAC ¶¶ 49-84.

CBRE's Motion tries to turn that pleaded eleven-day confidentiality, access, and retaliation sequence into isolated private workplace fragments. Rule 12 does not permit that.

## SUMMARY OF ARGUMENT

CBRE's Motion should be denied for four reasons.

First, CBRE's Motion improperly disaggregates the SAC. The pleading alleges a compressed employment sequence: regulated calibration work; identification of audit-readiness and data-integrity vulnerabilities; development of a confidential AI-driven calibration-integrity, workflow-governance, and evidence-preservation architecture; Policy 6.4 disclosure; request for confidential handling; alleged access pressure without an NDA or

2

safeguards; internal retaliation complaints; worksite removal; wage disruption; contradictory HR/offboarding signals; NDA and legal-hold activity; and termination shortly thereafter. SAC ¶¶ 32-84.

Second, the SAC plausibly pleads CEPA and Pierce claims. The clearest public-policy anchor is the trade-secret protection framework codified in the DTSA and NJTSA. Plaintiff alleges that he possessed confidential technical material with independent economic value, requested safeguards before disclosure, resisted access demands made under employment authority in the context of CBRE's alleged ultimatum and access pressure, asserted confidentiality and preservation rights, and was terminated days later. SAC ¶¶ 38-41, 44-48, 61-65, 77-84, 90-101. That sequence maps directly onto the public policy reflected in federal and New Jersey trade-secret law. The NJWPL, preservation context, workplace-safety allegations, and regulated calibration environment further support the claim; they are not the primary anchor.

Third, the SAC plausibly pleads trade-secret claims under the DTSA and NJTSA. Plaintiff identifies the trade-secret boundaries without publicly disclosing the protected technical core: an AI-driven calibration-integrity, workflow-governance, and evidence-preservation architecture with confidential modules including predictive calibration logic, audit-trail intelligence, chain-of-custody proof channels, diagnostic workflows, compliance-validation algorithms, and evidence-logging and integrity-tracking systems. SAC ¶¶ 38-41, 107-115. Plaintiff also pleads reasonable secrecy measures, access-related conduct under improper circumstances, independent economic value, and an interstate-commerce nexus. SAC ¶¶ 38-41, 61-65, 77-78, 107-115.

Fourth, dismissal with prejudice is unwarranted. CBRE's arguments concern specificity, characterization, causation, motive, public-policy nexus, contract formation, trade-secret boundaries, secrecy reasonableness, wage timing, declaratory relief, and prospective expectancy. Those arguments, if accepted at all, identify curable pleading issues or

fact-bound disputes, not incurable legal impossibility.

## PROCEDURAL POSTURE

CBRE filed a Motion to Dismiss Plaintiff's operative Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 369. CBRE seeks dismissal of all claims with prejudice. Def. Br., ECF No. 369-1.

CBRE attacks Count I under CEPA, Count II under Pierce/common-law wrongful termination, Counts III and IV under the DTSA and NJTSA, Count V for breach of contract, Count VI for breach of the implied covenant of good faith and fair dealing, Count VII under the NJWPL, Count VIII for tortious interference, and Count IX for declaratory relief.

On April 15, 2026, the Court granted Plaintiff's motion for leave to amend and directed the Clerk to file Plaintiff's proposed amended pleading as the operative Amended Complaint. ECF No. 365. Plaintiff does not contend that the April 15 Order resolves CBRE's present Rule 12 Motion. Plaintiff contends only that the present Motion must be decided under Rule 12 on the operative SAC now before the Court.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests pleading sufficiency, not ultimate truth. The Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). A complaint survives if it contains sufficient factual matter to state a claim plausible on its face. Twombly, 550 U.S. at 570. Plausibility requires enough factual content to allow a reasonable inference of liability — not probability, not certainty. Iqbal, 556 U.S. at 678.

Because Plaintiff proceeds pro se, his pleading is construed liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). Liberal construction does not eliminate Twombly or Iqbal. It requires the Court to read the pleading with

4

appropriate flexibility where the pleaded facts, reasonably construed, state a plausible claim.

Plaintiff does not amend the SAC through this opposition. The question is whether the SAC as filed gives fair notice and pleads plausible entitlement to relief. It does.

CBRE's Motion is not built on an absence of pleaded facts. It is built on CBRE's preferred interpretation of pleaded facts. That is not a basis for Rule 12 dismissal.

## ARGUMENT

### I. CBRE'S MOTION DEPENDS ON A FRAGMENTED READING OF THE SAC RATHER THAN THE REQUIRED WHOLE-PLEADING ANALYSIS

CBRE's Motion should be denied because it does not fairly read the SAC as a whole.

The SAC does not plead an ordinary private workplace disagreement. It pleads a regulated-workplace sequence involving calibration integrity, audit readiness, data integrity, controlled documentation, evidence preservation, confidentiality safeguards, protected objections, adverse employment action, wage consequences, and termination.

CBRE recasts the SAC as if Plaintiff merely disagreed with a conflict-of-interest assessment or submitted a private invention disclosure. But Plaintiff alleges that he worked in a GMP-regulated calibration environment; performed calibration, verification, troubleshooting, measurement-integrity, SOP, system-log, and quality-documentation work; identified workflow deficiencies, audit-readiness gaps, and data-integrity vulnerabilities; developed an independent calibration-integrity and evidence-preservation architecture; disclosed it through CBRE's internal process; requested confidential handling; objected to access without safeguards; filed an internal retaliation complaint; was removed; suffered payroll consequences; received contradictory HR/offboarding signals; and was terminated shortly after asserting confidentiality and preservation rights. SAC ¶¶ 32-84.

That sequence must be viewed together.

5

A Policy 6.4 disclosure is not evaluated in isolation from the confidential technical subject matter disclosed. An access demand is not evaluated in isolation from Plaintiff's confidentiality request and absence of agreed safeguards. A wage delay is not evaluated in isolation from the removal and termination sequence. The NDA and legal hold are not evaluated in isolation from secrecy measures, employer knowledge, preservation concerns, motive, timing, and pretext.

## II. PLAINTIFF PLAUSIBLY PLEADS A CEPA CLAIM

CBRE argues that Count I fails because Plaintiff allegedly did not plead protected activity or a reasonable belief that CBRE's conduct violated a law, rule, regulation, or clear public policy. That argument fails.

CEPA prohibits retaliation against an employee who objects to, refuses to participate in, or discloses conduct that the employee reasonably believes violates a law, rule, regulation, or clear mandate of public policy. N.J.S.A. § 34:19-3. To state a CEPA claim, a plaintiff must plead that: (1) he reasonably believed the employer's conduct violated a law, rule, regulation, or clear mandate of public policy; (2) he performed whistleblowing activity; (3) an adverse employment action was taken; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action. Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003); Hitesman v. Bridgeway, Inc., 218 N.J. 8, 29 (2014).

A CEPA plaintiff need not prove an actual violation at the pleading stage. The threshold inquiry is whether the facts alleged, if true, support a reasonable belief that the complained-of conduct had a substantial nexus to a law, rule, regulation, or clear mandate of public policy. Dzwonar, 177 N.J. at 462-64.

Plaintiff's theory is narrow. The SAC alleges that Plaintiff's protected conduct arose from the intersection of confidential technical material, trade-secret protection, objections to access without safeguards, regulated calibration work, data-integrity and audit-readiness

concerns, wage-payment disruption, preservation activity, employer knowledge, and termination. SAC ¶¶ 32-84, 90-101.

**A. The DTSA and NJTSA Provide the Clearest Public-Policy Anchor for Count I**

The clearest public-policy anchor for Count I is the trade-secret protection framework codified in the DTSA and NJTSA. Those statutes reflect a legislative judgment that confidential technical information with independent economic value deserves legal protection against improper acquisition, unauthorized disclosure, unauthorized use, and access obtained by improper means.

The SAC alleges precisely that sequence. Plaintiff possessed confidential technical material, requested safeguards, resisted access demands made in the context of CBRE's alleged ultimatum and access pressure, asserted confidentiality and preservation rights, and was terminated days later. SAC ¶¶ 38-41, 44-48, 61-65, 77-84, 90-101. The nexus between that sequence and the public policy reflected in the DTSA and NJTSA is direct, specific, and pleaded with factual particularity.

This trade-secret anchor matters because CBRE's Motion attempts to recast the case as a private invention dispute. But the SAC does not merely allege that Plaintiff had an invention. It alleges that Plaintiff possessed confidential technical material with independent economic value, requested confidential handling, resisted access pressure without an NDA or safeguards, and was terminated after asserting confidentiality and preservation rights. SAC ¶¶ 38-41, 44-48, 61-65, 77-84.

At least one decision in this District has recognized that trade-secret and confidential-information protections may provide a relevant statutory or public-policy anchor for CEPA where the pleaded conduct is closely tied to that framework. In Ho-Ho-Kus, Inc. v. Sucharski, the court held that allegations involving an employer agreement concerning "the use of trade secret or other confidential information" adequately established a CEPA

substantial nexus to the DTSA notice provision. Ho-Ho-Kus, Inc. v. Sucharski, No. 2:23-cv-01677, ECF No. 55, at 26-27 (D.N.J. Nov. 1, 2024). Plaintiff's theory here is different in mechanism but similar in legal relevance: CBRE's alleged conduct is tied directly to confidential technical material, requested safeguards, employment-authority access pressure, and asserted trade-secret rights.

Safonof reinforces the pleading rule. CEPA requires a plaintiff to identify, with minimum specificity, the law or public policy allegedly violated and to plead a close relationship between that policy and the challenged conduct. Safonof v. DirectSat USA, No. 19-07523, 2020 WL 1527946, at *3 (D.N.J. Mar. 31, 2020). Plaintiff does that here. The SAC pleads specific dates, actors, events, statutory anchors, protected subject matter, adverse actions, and causal sequence. SAC ¶¶ 32-84, 90-101.

The NJWPL, Rule 37(e) preservation context, workplace-safety allegations, and regulated calibration environment further support the CEPA claim. They are not the primary anchor. The NJWPL maps to the alleged May 9 wage delay and timesheet approval issue. SAC ¶¶ 72-73, 127-131. The evidence-preservation policy reflected in Rule 37(e) provides context for Plaintiff's preservation notice and legal-hold activity, which the SAC pleads as part of the confidentiality, employer-knowledge, timing, and retaliation sequence. SAC ¶¶ 77-84. The regulated calibration and quality-system context is pleaded through Plaintiff's calibration, documentation, measurement-integrity, audit-readiness, and data-integrity allegations. SAC ¶¶ 32-40.

Plaintiff does not rely on GMP status alone. The regulated environment matters because the pleaded concerns involved calibration integrity, audit readiness, data integrity, controlled documentation, and quality-system reliability. SAC ¶¶ 32-40. Plaintiff does not contend that every workplace disagreement inside a regulated facility automatically becomes protected activity. The SAC alleges a connected sequence of disclosures, objections, and safeguards tied first to trade-secret protection, and additionally to regulated-workflow

8

integrity, preservation context, wage payment, and workplace-safety concerns.

CBRE's private-dispute framing fails because it removes the trade-secret anchor, confidentiality objections, access pressure, preservation notice, wage event, workplace-safety context, and termination sequence from the pleading.

**B. The SAC Pleads Protected Activity, Employer Knowledge, Adverse Action, and Causation**

The SAC plausibly pleads protected activity, employer knowledge, adverse action, and causation.

CBRE argues that Plaintiff's Policy 6.4 disclosure is not protected activity because it was made through an internal policy. Plaintiff does not rely on Policy 6.4 merely because it was an internal policy. Plaintiff relies on the May 5 disclosure because the SAC alleges it communicated protected subject matter through CBRE's designated internal channel, gave CBRE knowledge, requested confidential handling, and triggered the adverse sequence that followed. SAC ¶¶ 44-49.

The protected character of the May 5 disclosure arises from what the disclosure concerned and what followed: confidential invention material, trade-secret safeguards, regulated calibration integrity, data-integrity vulnerabilities, requested safeguards, alleged access pressure, retaliation complaints, wage disruption, removal, and termination.

The causal connection is pleaded with specificity. Plaintiff submitted the May 5 Policy 6.4 disclosure asserting confidentiality and trade-secret-related rights. SAC ¶¶ 44-48. Within three days, CBRE accused him of a conflict of interest and issued an ultimatum. SAC ¶¶ 50-51. By May 8, CBRE subjected Plaintiff to an invention-focused interrogation and demanded access without safeguards. SAC ¶¶ 61-65. By May 8, CBRE removed him from the worksite. SAC ¶ 67. Within eleven days of the disclosure, CBRE terminated his employment. SAC ¶ 80.

9

Such compressed temporal proximity between protected disclosure and termination is precisely the kind of sequence the Third Circuit recognizes as "unusually suggestive" of causation. Abramson v. William Paterson College, 260 F.3d 265, 288 (3d Cir. 2001). The timing here is not abstract; it is a specific, pleaded chronology in which the adverse sequence followed Plaintiff's assertion of confidentiality and trade-secret-related rights.

The CEPA elements are pleaded in the operative complaint. Protected activity is alleged in SAC ¶¶ 44-54, 55-65, 77-80, and 90-94. Employer knowledge is alleged in SAC ¶¶ 44-48, 50-54, 61-65, 77-80, and 95. Adverse action is alleged in SAC ¶¶ 67-84 and 96-97. Causation is alleged in SAC ¶¶ 49-54, 61-84, and 98-100.

Temporal proximity is not the only fact pleaded. The SAC also pleads employer knowledge, invention-focused pressure, internal complaints, confidentiality and preservation safeguards, wage consequences, HR/offboarding contradictions, and termination. SAC ¶¶ 44-84, 92-100. Those allegations support a plausible inference of causation at the pleading stage.

**C. The May 8 Murray Incident Supports Pretext and Retaliatory-Motive Inferences**

The May 8 Murray incident is relevant to pretext, motive, sequence, and causation.

The significance of the May 8 Murray incident is not limited to whether hand-slamming independently violates a GMP regulation. The significance is what CBRE did immediately after: rather than addressing the workplace-safety concern Plaintiff intended to report, CBRE pivoted the same day to an invention-focused interrogation, access demands without safeguards, and removal from the worksite. SAC ¶¶ 55-70.

That pivot is circumstantial evidence of pretext and retaliatory motive. It suggests CBRE's concern was not workplace conduct but suppression of Plaintiff's confidentiality and trade-secret-related rights.

The pivot from a workplace safety event to an invention-focused interrogation the same afternoon is the kind of inconsistent employer response that supports pretext under Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Under Fuentes, pretext may be shown where the employer's proffered reason is implausible, inconsistent, or contradicted by the circumstances. Here, the SAC alleges that CBRE bypassed a workplace-safety concern to conduct an unannounced invention interrogation the same day. SAC ¶¶ 55-66. That sequence is inconsistent with legitimate conflict management and supports a plausible inference of pretextual motive at the pleading stage.

The Murray incident need not carry Count I by itself. It remains relevant because it shows the immediate pivot from a workplace-safety event to invention-focused questioning, access pressure, and removal. SAC ¶¶ 55-70. That sequence supports a reasonable inference that CBRE used workplace events as a pretextual gateway to intensify pressure over Plaintiff's confidential technical material.

**D. CBRE's Authorities Do Not Require Dismissal**

CBRE's authorities do not require dismissal because each rests on a materially different factual record than the one pleaded here.

Maw v. Advanced Clinical Commc'ns, Inc., 179 N.J. 439 (2004), held that a private dispute over a non-compete agreement did not implicate a clear mandate of public policy under CEPA. But the SAC does not plead a purely private dispute over employment mobility. It pleads a sequence involving confidential technical material protected by federal and New Jersey trade-secret law, access demands made under employment authority and without agreed safeguards, wage-payment disruption, evidence-preservation activity, and termination. Those allegations have public-policy implications beyond a private disagreement between employer and employee.

11

Klein v. University of Med. & Dentistry of N.J., 377 N.J. Super. 28 (App. Div. 2005), held that CEPA was not designed to settle ordinary internal grievances. The SAC does not allege ego, personality conflict, or ordinary internal dispute. It alleges retaliation for asserting confidentiality rights over independently developed technical material protected by the DTSA and NJTSA.

Battaglia v. United Parcel Serv., Inc., 214 N.J. 518 (2013), held that vague, conclusory complaints, trivial matters, and generalized workplace unhappiness are not CEPA-protected. Demands for confidential technical material without agreed safeguards, in the context of alleged ultimatum pressure and followed by termination eleven days after a protected disclosure, are not trivial or generalized. They are the core of a trade-secret and retaliation sequence.

Arterbridge v. Wayfair LLC, No. 21-13306, 2022 WL 577956 (D.N.J. Feb. 25, 2022), dismissed CEPA allegations where the plaintiff failed to plead a sufficient nexus to a clear mandate of public policy. Here, Plaintiff identifies the DTSA, NJTSA, and NJWPL as specific statutory sources and pleads a direct factual nexus to each. The nexus is not abstract.

Safonof v. DirectSat USA, No. 19-07523, 2020 WL 1527946 (D.N.J. Mar. 31, 2020), held that CEPA requires a plaintiff to identify, with minimum specificity, the law or public policy allegedly violated and to plead a close relationship between that policy and the challenged conduct. Plaintiff satisfies that requirement. The SAC does not offer a bare list of statutes. It pleads specific conduct, dates, actors, statutory anchors, adverse actions, and a causal sequence tying CBRE's alleged conduct to trade-secret protection, wage-payment policy, preservation context, workplace safety, and regulated calibration/data-integrity concerns.

Flear v. Glacier Garlock Bearings, 159 F. App'x 390 (3d Cir. 2005), held that a plaintiff's subjective perception of compliance issues is insufficient. Here, Plaintiff does not rely on subjective perception. He pleads specific conduct: access demands without an NDA, in

12

the context of CBRE's alleged ultimatum and access pressure, after explicit confidentiality requests, followed by termination. Those facts implicate the objective statutory framework of the DTSA and NJTSA.

Hitesman v. Bridgeway, Inc., 218 N.J. 8 (2014), requires a substantial nexus between the complained-of conduct and a clear mandate of public policy. Plaintiff pleads that nexus. The SAC ties CBRE's conduct to trade-secret protection, wage-payment policy, preservation context, workplace safety, and regulated calibration/data-integrity concerns.

Young v. Township of Irvington, 629 F. App'x 352 (3d Cir. 2015), requires an adverse employment action and causal connection. Plaintiff pleads both. He alleges worksite removal, wage disruption, HR/offboarding contradictions, and termination within eleven days of the May 5 disclosure. SAC ¶¶ 67-84, 96-100.

CBRE's authorities would matter if Plaintiff pleaded only private disagreement, generalized dissatisfaction, or subjective concern. He did not. Count I should not be dismissed.

## III. PLAINTIFF PLAUSIBLY PLEADS WRONGFUL TERMINATION UNDER PIERCE

CBRE's attack on Count II largely repeats its CEPA argument. CBRE argues that Plaintiff pleads only private disagreement and no clear mandate of public policy.

That framing is too narrow.

New Jersey recognizes a common-law wrongful-termination claim where an at-will employee is discharged contrary to a clear mandate of public policy. Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980). Sources of public policy may include legislation, administrative rules, regulations, judicial decisions, and professional codes. Id.; MacDougall v. Weichert, 144 N.J. 380, 391-92 (1996).

Plaintiff pleads Pierce in the alternative. CBRE's own authority recognizes that CEPA and common-law wrongful-termination claims may be pleaded alternatively, and that remedy

13

selection need not occur until after discovery. Arterbridge, 2022 WL 577956, at *6 n.4.

The strongest public-policy source supporting Count II is the same source supporting Count I: the trade-secret protection framework codified in the DTSA and NJTSA. Plaintiff alleges termination after he asserted confidentiality rights over independent technical material, requested safeguards, resisted access pressure without an NDA or safeguards, submitted an NDA and preservation notice, and was terminated days later. SAC ¶¶ 38-41, 44-48, 61-65, 77-84, 102-106.

The Pierce claim is independently supported by the pretext evidence pleaded in the SAC. The SAC pleads three independent bases for pretext: first, the temporal compression between the May 5 disclosure and the May 16 termination; second, the contradictory HR communications — CBRE People Services confirming Plaintiff was active while BeiGene was simultaneously told to offboard him, SAC ¶¶ 74-76; and third, the pivot on May 8 from a workplace safety event to an invention-focused interrogation. SAC ¶¶ 55-66. Those three strands of pretext evidence satisfy the standard articulated in Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994), which recognizes pretext where the employer's proffered reason is inconsistent with or contradicted by the circumstances of the employment action.

Plaintiff does not contend that every private invention dispute gives rise to a Pierce claim. Plaintiff contends that he was terminated after a broader regulated-workplace sequence involving protected objections, confidentiality safeguards, preservation activity, wage consequences, workplace-safety concerns, and regulated quality-system context.

Count II should not be dismissed.

## IV. PLAINTIFF PLAUSIBLY PLEADS TRADE-SECRET CLAIMS UNDER THE DTSA AND NJTSA

CBRE argues that Plaintiff fails to identify a trade secret, fails to plead reasonable secrecy measures, fails to plead independent economic value, fails to plead misappropriation,

and fails to plead an interstate-commerce nexus.

The SAC pleads each required component at the Rule 12 stage. Trade-secret boundaries are alleged in SAC ¶¶ 38-41 and 107-109. Reasonable secrecy measures are alleged in SAC ¶¶ 41, 46, 77-78, and 109. Access-related conduct under improper circumstances is alleged in SAC ¶¶ 61-65 and 110-115. Independent economic value and the interstate-commerce nexus are plausibly alleged through SAC ¶¶ 38-40 and 107-115.

**A. The SAC Identifies Trade-Secret Boundaries Without Publicly Disclosing the Secret**

The SAC identifies the boundaries within which the alleged trade secret lies while preserving the secrecy of the protected technical details: an AI-driven calibration-integrity, workflow-governance, and evidence-preservation architecture with specified confidential modules. SAC ¶¶ 38-39. Those modules include predictive calibration logic, audit-trail intelligence, chain-of-custody proof channels, diagnostic workflows, compliance-validation algorithms, and evidence-logging and integrity-tracking systems. SAC ¶ 39.

At the pleading stage, Plaintiff must identify the trade-secret subject matter with enough particularity to give fair notice and distinguish the alleged secret from general knowledge. The SAC does that by identifying the protected architecture and confidential modules while reserving the protected technical core.

The purpose of pleading trade-secret boundaries is notice, not public forfeiture of confidentiality. A trade-secret plaintiff must identify the boundaries of the alleged trade secret sufficiently to give notice. A plaintiff is not required to publish the trade secret itself in a public pleading.

**B. The SAC Pleads Reasonable Secrecy Measures**

The SAC plausibly pleads reasonable secrecy measures. Plaintiff alleges that he developed the invention independently, on his own time, using personal devices, restricting disclosure, preparing a detailed NDA, issuing a Rule 37(e) Legal Hold later in May, and filing

a provisional patent on April 30, 2025. SAC ¶ 41. Plaintiff further alleges that he requested confidential handling when making the May 5 Policy 6.4 disclosure. SAC ¶ 46.

CBRE argues that Plaintiff did not plead secrecy because CBRE did not execute the NDA. That argument treats the absence of a countersigned NDA as dispositive. It is not. The DTSA and NJTSA require reasonable secrecy measures under the circumstances, not a countersigned NDA as the only permissible secrecy measure.

Reasonableness is context-dependent. Here, Plaintiff alleges private development, personal-device development, restricted disclosure, ownership assertions, confidential handling requests, NDA submission, preservation notice, and limited disclosure through CBRE's own internal review process. SAC ¶¶ 38-49, 61-65, 77-78, 107-115. Whether those measures ultimately prove sufficient is a factual question. They are sufficient at the pleading stage.

**C. The SAC Pleads Access-Related Conduct Under Improper Circumstances**

Misappropriation includes improper acquisition, not only later commercial use.

The DTSA defines "improper means" to include "breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A). The SAC alleges that CBRE supervisors, acting in positions of employment authority, demanded access to confidential invention material in the context of CBRE's alleged ultimatum and access pressure, without an NDA, without agreed safeguards, and after Plaintiff explicitly requested confidential handling. SAC ¶¶ 61-65.

That sequence plausibly supports an inference of access-related conduct under improper circumstances, including pressure inconsistent with Plaintiff's asserted duty and efforts to maintain secrecy over his confidential technical material. Whether CBRE ultimately retained, replicated, or commercially used the material is a factual question for discovery. At the pleading stage, access demands made under employment authority, in the context of

16

alleged ultimatum pressure, without agreed safeguards, and after explicit confidentiality requests plausibly state improper acquisition or access under improper circumstances within the meaning of 18 U.S.C. § 1839(5)-(6).

CBRE may later argue that no protected material was acquired, used, disclosed, or retained. But the SAC alleges that CBRE demanded access to confidential invention material without an NDA, without security safeguards, and without a legal basis, and pressured Plaintiff to show portions of the invention on his personal phone after Plaintiff requested confidential handling. SAC ¶¶ 61-65.

CBRE's attempt to reduce the allegation to "temporary viewing" draws the inference in CBRE's favor. The SAC does not plead neutral, voluntary, or safeguarded viewing. It pleads access pressure by supervisors in an employment-authority setting after Plaintiff had disclosed confidential invention material and requested confidential treatment. SAC ¶¶ 44-48, 61-65.

The issue is not whether CBRE ultimately used the material; the issue is whether the SAC plausibly alleges improper acquisition, disclosure, use, or access-related conduct under circumstances Plaintiff pleads as unauthorized, coercive, and contrary to requested confidentiality safeguards.

The SAC further alleges that CBRE demanded confidential components without an NDA, pressured Plaintiff to reveal portions of the invention from his personal cell phone during the May 8 interrogation, and engaged in access-related conduct Plaintiff pleads as unauthorized, employment-authority-driven, and contrary to requested confidentiality safeguards. SAC ¶¶ 110-115.

Whether those allegations ultimately prove acquisition, improper means, disclosure, use, damages, or only insufficient access is not properly resolved by drawing inferences against Plaintiff at the pleading stage.

**D. The SAC Pleads Independent Economic Value and an Interstate-Commerce Nexus**

17

The independent economic value of WattsProtect™ is plausible from the pleaded facts for two reasons.

First, the architecture addresses alleged gaps in regulated pharmaceutical-quality environments involving calibration integrity, audit readiness, and evidence preservation in GMP facilities. SAC ¶¶ 37-40. Those allegations plausibly support a reasonable inference of potential economic value at the pleading stage.

Second, the SAC alleges that Plaintiff filed a provisional patent on April 30, 2025 — before any employment dispute arose. SAC ¶ 41. A provisional patent filing is evidence of a good-faith belief in the invention's value and novelty. At the pleading stage, those two facts together plausibly support independent economic value within the meaning of 18 U.S.C. § 1839(3).

The pharmaceutical calibration and quality-assurance market is national and interstate in scope. Regulated GMP facilities operate across multiple states under federal FDA oversight. An AI-driven calibration-integrity architecture developed for and tested in that environment is, by its nature, intended for a product or service used in interstate commerce within the meaning of 18 U.S.C. § 1836(b)(1).

Counts III and IV should not be dismissed.

## V. PLAINTIFF PLAUSIBLY PLEADS BREACH OF CONTRACT, OR AT MINIMUM A CURABLE IMPLIED-IN-FACT CONFIDENTIALITY THEORY

CBRE argues that Count V fails because CBRE did not sign, countersign, execute, or otherwise agree to the NDA, and because Plaintiff allegedly fails to identify the terms, breach, and damages.

Plaintiff does not ask the Court to hold that mere submission of an NDA automatically formed an executed contract. Plaintiff's strongest contract theory is implied-in-fact confidentiality based on CBRE's formal Policy 6.4 process and CBRE's receipt of confidential invention-related information through that process.

Plaintiff does not seek to amend the SAC through this argument. The implied-in-fact confidentiality theory is grounded in facts already pleaded in SAC ¶¶ 44-48, 61-65, 77-84, and 119-123, and is asserted at minimum as a basis for denial of dismissal with prejudice or targeted leave to amend if the Court requires greater specificity.

To the extent the Court concludes that the implied-in-fact theory is not sufficiently pleaded as a standalone contract theory, Plaintiff requests only that dismissal be without prejudice because the theory arises from the same pleaded confidentiality facts.

CBRE maintained Policy 6.4 as a formal internal process specifically designed to receive employee disclosures of outside inventions. SAC ¶¶ 44-48. That process has a specific purpose: to allow CBRE to review potential conflicts while providing a designated channel for employees to assert ownership and request confidential handling. When Plaintiff used that process — signed the form, described the invention, asserted ownership, requested confidential handling, and confirmed no CBRE resources were used — CBRE received the benefit of that disclosure. SAC ¶¶ 44-48.

A formal institutional process designed to receive confidential invention disclosures implies, at minimum, an obligation of confidential handling in exchange for the disclosure it is designed to elicit. New Jersey recognizes that an implied-in-fact contract may arise from conduct and surrounding circumstances, and such contracts are generally binding like express contracts. Troy v. Rutgers, 168 N.J. 354, 365 (2001); Comprehensive Neurosurgical, P.C. v. The Valley Hospital, 257 N.J. 33, 74-75 (2024).

CBRE's Policy 6.4 process, Plaintiff's use of that process, CBRE's receipt of the disclosure, Plaintiff's express request for confidential handling, and CBRE's alleged pressure for further access without safeguards plausibly support an implied-in-fact confidentiality theory at the pleading stage. SAC ¶¶ 44-48, 61-65, 77-84, 119-123.

Even if the Court concludes that the SAC requires greater specificity regarding assent, terms, or breach, that would not establish incurable legal impossibility. It would identify, at

19

most, a curable pleading issue. The NDA and confidentiality allegations also remain relevant to the trade-secret and retaliation claims because they show Plaintiff's asserted secrecy measures, request for safeguards, employer knowledge, and the context of the alleged access pressure and termination.

Count V should not be dismissed with prejudice.

## VI. PLAINTIFF PLAUSIBLY PLEADS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, OR AT MINIMUM A CURABLE DERIVATIVE CONTRACT THEORY

CBRE argues that Count VI fails because there is no underlying contract.

Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). The implied-covenant claim survives if the Court finds a plausible contract, confidentiality-related agreement, or implied-in-fact contractual relationship.

The SAC alleges that Plaintiff sought confidential review, disclosed protected invention-related information through CBRE's internal process, submitted an NDA, objected to access without safeguards, and was deprived of the benefit of confidential handling and protected review. SAC ¶¶ 44-48, 61-65, 77-84, 119-127.

If the Court finds that the SAC plausibly pleads a confidentiality-related agreement or implied-in-fact contractual relationship, the implied-covenant claim should survive because Plaintiff alleges that CBRE acted to deprive Plaintiff of the benefit of confidentiality, proper handling, and protected review.

If the Court finds the underlying contract basis insufficiently pleaded, Count VI should be dismissed without prejudice only. Any dismissal of Count VI should not affect the relevance of the NDA, confidentiality notice, Policy 6.4 disclosure, or related facts to the trade-secret, retaliation, causation, and pretext allegations.

Count VI should not be dismissed with prejudice.

20

**VII. PLAINTIFF PLAUSIBLY PLEADS A NEW JERSEY WAGE PAYMENT LAW CLAIM, AND CBRE'S JURISDICTION ARGUMENT FAILS IF ANY FEDERAL CLAIM SURVIVES**

CBRE argues that the New Jersey Wage Payment Law claim fails for lack of jurisdiction and insufficient factual detail.

CBRE's jurisdiction argument is conditional. It depends on the Court first dismissing every federal claim. Supplemental jurisdiction, not diversity jurisdiction, is the operative basis if the DTSA claim survives. CBRE's amount-in-controversy argument addresses diversity jurisdiction, not supplemental jurisdiction attached to a surviving federal claim.

If any federal claim survives, including the DTSA claim pleaded under 18 U.S.C. § 1836 and invoking federal-question jurisdiction under 28 U.S.C. § 1331, the Court may exercise supplemental jurisdiction over the wage claim under 28 U.S.C. § 1367 because the wage claim arises from the same employment sequence involving Plaintiff's removal, timesheet approval, payroll handling, adverse action, and termination.

The SAC alleges a specific payroll event. Plaintiff alleges that on May 9, 2025, he did not receive his paycheck, and that CBRE Payroll informed him the delay resulted from Miller failing to approve the timesheet. SAC ¶¶ 72-73. Plaintiff further alleges that CBRE failed to pay wages due on the regular payday, violating the Wage Payment Act. SAC ¶¶ 128-131.

The exact pay period, approval records, payroll records, and payment timing are matters CBRE controls and can test later. They do not justify dismissal with prejudice at the pleading stage.

Count VII should not be dismissed.

**VIII. COUNT VIII SHOULD NOT BE DISMISSED WITH PREJUDICE**

CBRE argues that Count VIII fails because Plaintiff allegedly does not identify a specific prospective economic or contractual relationship, intentional interference without justification, causation, or cognizable loss.

21

Under New Jersey law, tortious interference with prospective economic advantage requires: (1) a reasonable expectation of economic advantage; (2) intentional and malicious interference; (3) a causal connection between the interference and the loss of prospective gain; and (4) actual damages. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52 (1989); MacDougall v. Weichert, 144 N.J. 380, 404 (1996).

Count VIII is pleaded in the alternative and should not be dismissed with prejudice at the pleading stage. The SAC alleges prospective future roles in calibration, GMP integrity, and AI-governance opportunities, and alleges that CBRE interfered through false conflict statements, escalated retaliation, alleged misrepresentation to BeiGene, misuse of authority, and termination. SAC ¶¶ 132-135.

Plaintiff recognizes that tortious interference requires a protectable expectancy and more than speculation. Plaintiff maintains that Count VIII is pleaded in the alternative and should not be dismissed with prejudice where any deficiency would concern the specificity of the expectancy, interference, causation, or loss.

CBRE's Motion does not show incurable legal impossibility. At most, CBRE identifies a pleading-detail issue, not an incurable legal bar. If the Court agrees that additional specificity is required, any dismissal of Count VIII should be without prejudice and limited to the deficiency identified by the Court.

## IX. DECLARATORY RELIEF SHOULD BE PRESERVED AS A REMEDY IF ANY UNDERLYING CLAIM OR LIVE CONTROVERSY SURVIVES

CBRE argues that declaratory judgment is not an independent cause of action and is only a remedy.

Plaintiff does not rely on declaratory judgment as an independent tort or standalone substantive wrong. Plaintiff does not oppose treating Count IX as a request for declaratory relief rather than an independent substantive cause of action, provided declaratory relief

22

remains available if any underlying claim or live controversy survives.

The Declaratory Judgment Act provides that, in a case of actual controversy within its jurisdiction, a federal court may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201(a). Plaintiff seeks declaratory relief as a remedy tied to a live controversy involving ownership, non-use, confidentiality boundaries, and CBRE's alleged lack of ownership over WattsProtect™. SAC ¶¶ 136-139.

The Court may dismiss or recharacterize Count IX as a remedial request without dismissing the underlying substantive claims or foreclosing declaratory relief if a live controversy remains.

## X. DISMISSAL WITH PREJUDICE IS UNWARRANTED

Even if the Court finds any count deficient, dismissal with prejudice is not warranted.

CBRE seeks the harshest possible result: dismissal of all claims with prejudice before answer, Rule 16, Rule 26, discovery, or any factual record. That relief is not warranted. Even if the Court accepts any part of CBRE's specificity arguments, the alleged deficiencies would concern pleading detail, factual characterization, or issues better tested after a record develops. They would not establish that amendment is inequitable or futile as a matter of law.

Dismissal with prejudice is particularly unwarranted here because many of the alleged deficiencies CBRE identifies concern fact-bound issues, pleading detail, or matters better tested after a factual record develops. Whether Plaintiff's secrecy measures were reasonable under the DTSA is a factual question informed by evidence CBRE controls, including internal communications about WattsProtect™, records of the May 8 interrogation, HR decision-making records, and offboarding documentation. SAC ¶¶ 61-76. Whether CBRE's conflict-of-interest justification was legitimate or pretextual is likewise a factual issue not properly resolved against Plaintiff at Rule 12. Dismissing these claims with prejudice before Plaintiff has any access to that record would be premature.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given when justice so requires. The Third Circuit has repeatedly recognized that leave to amend should be granted unless amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

The central Rule 12 issue remains whether the operative pleading, read as a whole and construed in Plaintiff's favor, plausibly alleges a connected sequence of protected activity, employer knowledge, access pressure, adverse action, wage disruption, termination, trade-secret-related harm, and a continuing live controversy.

CBRE has not shown that any identified deficiency could not be cured by targeted amendment. Even if the Court narrows the case, CBRE has not shown that amendment would be inequitable, futile, or incapable of curing any identified pleading deficiency.

Dismissal with prejudice would be premature.

## CONCLUSION

CBRE's Motion should be denied.

The SAC pleads a specific eleven-day sequence: protected disclosure on May 5, conflict accusation and ultimatum within three days, invention-focused interrogation and access demands by May 8, worksite removal by May 8, and termination on May 16 — less than twenty-four hours after Plaintiff submitted an NDA and Legal Hold asserting his confidentiality and trade-secret rights. The SAC plausibly alleges that the adverse sequence followed Plaintiff's assertion of confidentiality and trade-secret rights protected by federal and New Jersey law.

CBRE may later prove that its conduct was lawful. It may prove that its conflict-of-interest finding was legitimate, that its access demands were authorized, that its termination decision was unrelated to Plaintiff's disclosures, and that WattsProtect™ does not

24

qualify as a trade secret. Those are merits questions for a developed factual record.

At Rule 12, the question is narrower. The question is whether the SAC, accepted as true, plausibly alleges that CBRE responded to protected disclosure with access pressure, wage disruption, worksite removal, and termination. It does. A finding to the contrary would require this Court to resolve disputed motive, draw inferences against the non-moving party, and foreclose federal trade-secret and whistleblower claims before the party with access to the relevant internal record has been required to produce a single document. Rule 12 does not authorize that result.

The Motion should be denied.

Respectfully submitted,

Dated: April 30, 2026

/s/ Andre Jason Watts

ANDRE JASON WATTS
Plaintiff Pro Se
28 Wilson St.
North Brunswick, NJ 08902
Telephone: 732-853-4977
Email: ANDREWATTS23@gmail.com